Sedgwick, J.
This is a prosecution for an intrusion into the lands of the commonwealth, instituted by an information of the attorney-general, by the special order of the legislature.
The defence set up by the plea of the defendants is, in substance, that there being a former prosecution of the same kind against Josiah Little, they became, by consent, parties to it; that afterwards, during the pendency of that prosecution, a resolution passed all branches of the legislature, authorizing the attorney-general, under a rule of this Court, in which the action was then pending, to submit all the controversies and disputes subsisting between the commonwealth and themselves, the Pejepscut proprietors, to referees, to be mutually agreed upon, if he thought it to be for the interest of the commonwealth; which submission was to be upon such conditions, limitations, and restrictions, as the attorney-general might think for the benefit of the commonwealth and all concerned; provided, however, that, at all events, actual settlers on the undivided, lands, which might be awarded to the proprietors, *342 should be quieted in their possessions upon the terms which the resolution prescribes; that the action was referred upon that condition, enforced by a further provision expressed in the following words, “ Secondly, that if the proprietors should neglect or refuse to comply with or perform their stipulations aforesaid, according to the true intent, meaning, and effect thereof, that then this rule, or any report made pursuant thereto, and any judgment that may be rendered thereupon, shall be absolutely null, void, and [ * 409 ] of no effect whatever, * either in Court or elsewhere, if the commonwealth at any further time shall choose to consider it so; and that the nullity of the same act, resulting from the non-performance of the said stipulation, may be given in evidence on any issue between the said commonwealth, or any person claiming under the same, and the said Little, the said proprietors, or any person claiming under either of them.”
The plea then sets forth the referees agreed upon, the submission to them, their hearing of the parties in conformity to the submission, and their award, which was, that the title and claim of the proprietors ought to be considered as extending, and that they should have and hold, subject to the provisions and regulations stated in the rule of Court respecting settlers, the land now in controversy, upon condition that they should, within six months from the date of the award, execute a deed of release to the commonwealth, sufficient in the opinion of the Supreme Judicial Court, or of the attorney-general, to bar the proprietors from any future claims to lands northerly of the northerly boundaries of the lands which were to belong to the proprietors, and to confirm the same to the commonwealth ; and should lodge the same deed, within the time aforesaid, in the clerk’s office, or with the attorney-general; that the referees made a report of their award to the Court, which accepted the same, and rendered judgment thereon; that the title of the said Josiah Little, and of the said proprietors, and of all persons claiming under them, and either of them, in and to the land described in the said report, be confirmed to them, their heirs and assigns, agreeable to the said report.
The replication, in answer to this plea, after several protestations, denies that the proprietors had made any such deed as was prescribed by the referees as a condition, on which the lands described in the award should be confirmed to them.
To this replication there is a general demurrer and joinder.
[ * 410 ] * As the lands, an intrusion into which is complained of in the information of the attorney-general, are within the limits of the commonwealth; to resist the claim which the gov *343 ernrnent makes, it is incumbent on the defendants to show a title to them. This they do only by the proceedings in the former action against them—the submission to referees, their award, the acceptance of it by the Court, and their judgment thereon. The judgment is agreeable to the report of the referees, and that report is upon two conditions: 1. That relative to the quieting of settlers on the undivided lands ; and, 2. That which required a deed of certain other lands, which it is understood were claimed by the proprietors, to the commonwealth. Will a non-performance of those conditions be sufficient to prevent a title from vesting in the defendants, by virtue of the proceedings under the reference ?
The submission was expressly on condition that the proprietors should, in the manner specified, quiet settlers on the undivided lands which might be awarded to them ; enforced, as has been said, by a provision prescribed by the attorney-general, and assented to by the defendants, that if they should fail to comply with, the stipulations which it was understood they had made, and should neglect or refuse to quiet the settlers, according to their agreement, that it should then become competent to the government, if it should so choose, to consider all the proceedings under that action, the report and the judgment thereon, as a mere nullity, and that thereupon and thereby they should become absolutely void.
It is strange that the record presents no facts satisfactory on this part of the case; but as it is understood that there is no controversy between the government and the proprietors respecting this point, I shall make no observations upon it, and especially for this reason, that I have no doubts upon the other part of the case.
The question, then, arises on the condition annexed by the referees to their report. Upon investigation, it appeared * to them that the title and claim of the proprietors [*411 ] “ ought to be considered as extending ” to the limits designated; they therefore report, that the proprietors shall have and hold the land within those limits, subject to the “ provisions and regulations” stated in the rule of reference. At the same time, the referees are satisfied that the title and claim of the proprietors does not extend northerly beyond those limits; but that the lands lying northerly of them belonged to the commonwealth. The referees, therefore, with an intention to put an end forever to all controversy between the government and the proprietors, came to a conclusion, and awarded accordingly, that the proprietors should “ have and hold ” the land which belonged to them; to which they had “ title,” provided they would release other lands, which it is understood they claimed, but to which, in the opinion of the ■eferees, their title did not extend. This award, in the nature of a *344 proposition made to the proprietors, on which they had six months to deliberate, was reported to the Court, accepted by them, and a judgment rendered “ agreeable ” to it. It now became as Certain as any proceedings could have rendered it, that the proprietors might have all the lands, to which, in the opinion of the referees, their title extended, on performing a condition, on which the referees thought it reasonable that their title should depend. The refuse to perform the condition, and yet they claim to hold the land. Is it possible that such a claim should be founded in justice ? Or are we so shackled by the trammels of positive law, or so controlled by technical reasoning, that against justice we are bound to substantiate it ?
When we are endeavoring to discover what the rights of parties are, and those rights are described or defined by language, we must determine them according to the words and expressions made use of, and that in conformity to their known meaning, which must be learned from their common acceptation and application. Nor can it, in the reason of the thing, make any difference by [ * 412 ] whom the words were * used; whether by the party himSelf, or by another who was authorized to decide upon the rights in question; nor can the manner of using the words, whether orally, in writing, by specialty, or, ak I apprehend, by record, make a difference. We must still attend to the words, and consider them in relation to one another, and in relation to the subject matter; and if in the result we find that they have invariably one meaning, according to their universal use and application, we ought never to say that they shall execute a different and opposite purpose.
Had this been a grant of the government, in substance like the award of the referees ; that is, that the proprietors should have certain lands, on condition that they released other lands within six months, and they should neglect to release, it is certain they could not hold. Again ; suppose it rested on the award of the referees, and we were now inquiring what their meaning was; they say that the proprietors shall have and hold on condition that they shall release; can we say their meaning was, that the proprietors should hold without releasing? By what magic has the award become a totally different thing, expressing not only a different but an opposite meaning, by being accepted by the Court and recorded by the clerk ? When the referees wrote their report, they certainly meant that the proprietors should not have the land, unless they made the release. The Court accept the report, and direct a judgment to be entered “ agreeable to it.” They certainly meant that the report and the judgment should in fact agree, should mean the same thing, *345 that by looking at the report, and knowing what that meant, one might know what the judgment intended. If the former be conditional, the latter cannot be absolute.
The absurdity of giving two different and opposite meanings, the one to the report and the other to the judgment, is rendered still more glaring, if possible, from this consideration, that the Court could not, in any respect, vary by their judgment the report of the referees ; their whole * power over reports [ * 418 ] being to accept, reject, or recommit them. They can neither enlarge nor diminish, being only an instrument to execute what the referees have previously determined. But here the effort is to make them execute what has never been determined by the referees.
The condition in this case is a condition precedent: and it is, without any exception, universally true, that wherever a right or benefit is to accrue on a condition precedent, whatever the nature or character of the condition may be, there the performance of the condition is indispensable to the vesting of the right, or the obtaining of the benefit. The right is always in conformity to the condition. The language is, if you will do, you shall obtain; and the effect is, that if you will not do, you shall not obtain. And this principle has been applied to the case of an award, in the reason of the application, precisely like that under consideration; with this only difference, that there the condition was to do a thing merely void and of no importance; while here the condition was of real interest. In the case of Lee vs. Elldns, (5) it is laid down, that “ where an award consists of divers things, and one of them is void, and it is expressly said, that, upon the performance of the void thing, the other party shall do such a thing, there the doing of the void thing is a condition precedent, and must be averred before action against the other for not doing his part.” To apply the principle to the case before us—had the release, which was made the condition, been evey so insignificant; had it been, in the language of the report, void; still, to give a title, or be evidence of it, it must have been performed. But here it was in nature of a consideration; if the proprietors would give up their claim to certain lands, they should have certain other lands. It was as much in the nature of a consideration, as the payment of money would have been ; and it was as reasonable that it should be performed. Suppose, then, the award had been that the proprietors should have the land “ upon condition that they paid a certain sum »f money,” and the * report had been accepted, and [*4141 *346 judgment rendered “ agreeable to itupon what ground of justice could they claim to hold, if they would not pay ? And what difference is there as to the right, whether money is to be paid or land released ?
It was said, in the argument, that the Court could not render a conditional judgment. If that were true, it would follow that in this case they could render no judgment; for it has been already shown that, in cases of judgments upon the reports of referees, the judgment cannot vary from the report; the whole power which the Court possesses being to accept, reject, or recommit the report. So that if the report be conditional, the judgment must also be conditional. And besides, were it true that the Court cannot render a conditional judgment, the consequence would be, that the act, in such a case, purporting to be a judgment, would be ineffectual and inoperative ; and not that it should be made absolute by separating from it the condition, and considering that as mere surplusage ; and thereby effecting that which we know the authors of the act never intended should be effected by it.
But, it is not true that courts cannot render a conditional judgment. Judgments in detinue are always conditional, when in favor of the plaintiff; to recover the thing sued for, or, if it cannot be found, its equivalent in damages. So, also, judgments upon mortgages are always conditional. And in Salk. 400, it is said, that when a judgment is confessed upon terms, it being in effect but a conditional judgment, the Court will lay their hands upon it, and see the terms performed. There is good sense in this. The party, who claims under such a judgment, shall, before he receives the benefit of it, perform the condition on which his title depends.
It seems to me that it ought to depend on the subject matter of a judgment, and the purposes to be effected by it, what should be its form. And why should a court be restrained by [ *415 ] any artificial rule, from the power of doing * justice between parties ? which will frequently be the case, and especially upon the subject of awards, if conditional judgments cannot be rendered. In the case before us, as it appeared reasonable to the referees, if the proprietors were to be secured in the lands awarded to them, that they should relinquish their claim to other lands, why should not that purpose be accomplished ? Can any one now say that it was unreasonable or unjust ? And if it was not, why might they not, in form, make the one event to depend upon the other—the title upon the release ?
But it is objected, that the report of the referees says, that “ the title and claim of the proprietors ought to be considered as extending, and that they shall have and hold ” to the limits awarded to *347 them ; that this is evidence that their title extended to the land in question ; and that this evidence ought to be considered as conclusive against the commonwealth.
To these observations an answer has already been suggested. The whole report was upon condition, and that condition an inseparable part of it running through and controlling the whole. It is as if, in other form, the report had said upon condition that the proprietors shall release to the commonwealth the lands specified to be released; then upon the performance of that condition, their title and claim ought to be considered as extending, and they shall have and hold so far. It is tantamount to saying, upon condition the proprietors should pay a thousand dollars; then, or upon the performance of that condition, their title and claim ought to be considered as extending, and they should have and hold so far. The release was in the one case as much a condition upon which, and a consideration for which, the proprietors were to be confirmed in their title, as the payment of the money would have been in the other.
But it was said, that, although it may be true that the judgment is erroneous, and might be reversed on a writ of error; yet so long as it remains in force, it is a bar to the claim of the commonwealth.
*To this the observations, which I have already [*416] made, afford to my mind a satisfactory answer. As the report of the referees was conditional, so also was the judgment of the court, and from the nature of it, it must be conditional.
The condition is an essential and inseparable part of it, and all taken together, it affords no evidence whatever of title in the defendants. It was competent to the court to render such a judgment. The referees made a report, which, upon the face of it, did not appear improper or unreasonable ; no objection was made to it. In such a case, according to the usage of the court, they might and indeed ought to accept it, and to render judgment “ agreeable to it.” There is then no error, for which it could be reversed.
For an obvious reason, it was proper that the report should have been accepted, when it was presented to the court; and the court ought not to have delayed acting upon it, until a release was given by the proprietors ; for until the report was accepted, the proprietors could not know whether it ever would be ; and as discreet and cautious men, they might deem it an act of imprudence to release their title to lands at a time when it would be uncertain whether they should ever get an equivalent for it. It seemed, therefore, proper to decide on the acceptance of the report, to give them an opportunity of determining whether they would accept the lands *348 awarded to them, by the performance of the condition, which was to be within six months from the date of the award.
I think the whole difficulty in this case, which indeed has never struck my mind with much force, has arisen from confounding judgments rendered on the report of referees, with judgments given according to the ordinary course of the common law.
By the common law, in cases of arbitrament, the arbitrators may award such acts to be done by the parties respectively, as may consist with the justice of their claims. They may award [ *417 ] money to be paid, or specific acts to be done ; *and this either absolutely or upon condition, as they may judge right. By the statute of 9 f 10 Will. 3, c. 15, in cases where awards are to be enforced by attachments, the arbitrators have the same power as in other cases ; and they may, of course, direct money to be paid, or a specific act to be done, upon a condition precedent. If the condition be performed, the party is entitled to his remedy.
We have two modes of submission to arbitration, besides those authorized by the common law; the one by entering into a rule for that purpose before a justice of the peace, and the other by a reference of an action depending in court, which may, besides the action pending, comprehend such other demands between the parties, as they may agree upon. In both kinds of submission, the award of the referees is reported to the court. If the report be accepted, the consequence is a judgment in conformity to it. There can be no variation from it. The referees have all the power of arbitrators in other cases. They may award money to be paid, or a specific act to be done ; and in either case it may be absolute or conditional. If money only is awarded to be paid, as then due, an execution may issue, as in other cases. If the judgment is prospective, by directing money to be paid in futuro, or a specific act to be done, the remedy is either by attachment, or by action on the judgment; and if a benefit is to accrue, or a right is made to depend, on the performance of a condition ; if the condition be performed, the party is entitled to the same remedies, to enforce the award ; but if it be not performed, the benefit or right does not accrue.
I have always supposed that these principles were undoubted. There is nothing in this case, to take it out of the influence of these principles. The referees were arbitrators elected by the parties; they had all the powers of arbitrators in other cases : they made a report upon a condition, which they thought reasonable; and which I think I am bound to deem so : the performance of the [ *418 ] condition *was to precede the' vesting of a title in the defendants : it has not been performed: the report was *349 accepted by the court, according to the terms of it; and the judgment was “agreeable to the report,” and indeed could not vary from it. The consequence is, that there is no title shown on the part of the defendants, and that, therefore, on this issue the commonwealth is entitled to judgment.
Parke¡t, J.
(after reciting the substance of the information, and the pleadings thereon to the demurrer and joinder.) The question then before the Court is, whether the replication is good, or, in other words, whether the non-performance of the condition stated in the report renders nugatory the proceedings of the court upon the report of the referees, so that the defendants cannot by law avail themselves of the same, as a judgment to bar this or any future information for intrusion upon the same lands. The question therefore will be seen to be, whether the record, as set forth, shows a judgment upon the title in favor of the defendants. For if it does, I know of no principle, by which that judgment can be avoided by plea, as is attempted in the present case ; it being well settled, and upon sound principles, that the judgment of a court of competent jurisdiction is conclusive upon the subject matter between the same parties, although such judgment may be manifestly erroneous, and although, upon a writ of error brought, it may be clear that such judgment would be reversed.
In the case before us, the proceedings, after the submission to referees, were not according to the course of the common law ; but the court exercised a particular jurisdiction, given to them by the resolution of the General Court, which authorized the submission, and the agreement of the parties pursuant to that resolution. The Court had no authority to give a judgment contrary to, or different from, the report of the referees ; or to dispense with any terms or conditions within the authority of the referees to require of either of the parties; so that, if the act of the court, which is considered by the defendants to be a judgment, did confirm * their title to the lands upon principles not authorized by [ * 419 ] the submission and the report, that act would be void, as not within the authority or jurisdiction of the court.
The condition stated by the referees, was undoubtedly intended by them to be a condition precedent; and the terms, in which it is expressed, clearly show it to be so. For, after describing the lands intended to be confirmed to the defendants, and the opinion of the referees upon the title, they conclude by awarding them to the defendants upon the condition expressed, stating the time within which that condition is to be performed. There can be no doubt that the referees intended that, unless the condition was performed within the time assigned by them, the defendants should not *350 avail themselves of their report to strengthen their title to the lands.
Now, had the court entered a general judgment, according to the common law that the commonwealth should take nothing by their writ, and that the defendants should go thereof without day, • this could not have been good, except upon the presumption that the condition had been performed, or that the condition was unlawful or void. But no such judgment was entered. On the contrary, the court confirm the title, agreeable to the report; thus adopting the condition, and either making a conditional judgment, never to operate but upon performance, or, in fact, doing nothing but giving judicial sanction to the report of the referees.
To attempt, therefore, to set up these proceedings as a bar to the present suit, with an admission that the condition has never been performed, is to act in direct opposition to the will of the referees, as expressed in their report, and to the opinion of the court, as found in the record of their proceedings.
It being clear to my mind, that the record does not show such a judgment as is conclusive, while it remains unreversed, [ * 420 ] but that it may be avoided by any facts existing in * the pleadings, which show that it ought not to stand as a bar to the commonwealth’s present suit, — I am now to consider whether the matter contained in the replication is sufficient to destroy its effect. Undoubtedly, a submission, so solemnly entered into, of the dispute respecting the land which is the subject of the present suit, with a report of the referees thereon, sanctioned and adopted by the court, ought to be conclusive between the parties, as far as they were intended, and as far as they can be legally construed so to be It has therefore been contended by the defendants, that so much of the report as relates to the condition is bad, being not within the authority of the referees, according to the submission, and that the report is good for the residue; which, being a confirmation of their title, is enough for the defence against this action.
That an award, to which a report of referees is analogous, may be good in part and bad in part, is a received doctrine in the law of arbitrament and awards. And the courts here have conducted on like principles, in accepting reports of referees under a rule of court, or under the referee law of this commonwealth.
But there is an exception to this general rule, as well settled as the rule itself, which is, that, when the bad part of an award was apparently intended by the arbitrators, as the consideration of the other part, which is good, the whole shall be set aside, and become void. And the reason is, that otherwise that which was intended to be mutually beneficial will operate to the advantage of one of the *351 parties only. If such an award should be executed, manifest injustice would be done; for the equivalent intended by the arbitrators could not be enforced, being contrary to law, and void.
This doctrine is clearly established in the case of Pope vs. Brett, 2 Saund. 293, and in note 1, to that case. Also in 1 Roll. Abr. 259, pi. 9, 10. So that, if the condition expressed in the report set forth in the record before us is void, because the subject matter of it was not within the * authority of the [ * 421 J referees, as contained in the submission, then is the whole report void ; it being clear that the release awarded to the commonwealth was intended as a consideration for the confirmation of the land, described in the report, to the defendants.
But I am not satisfied that the conditional part of the report was in itself bad. It is true that the title to the two tracts of land described in the submission was the subject referred ; but it is also true that the information, suit, or inquest of office, was submitted to the referees. Now, it does not appear by the record, that the land described in the information is the same which is described in the submission. Indeed the descriptions are different. If the land demanded in the information extended northwardly of the land de scribed in the rule of submission, it was within the cognizance of the referees, and might properly be the subject of the release from the defendants. That it did so extend, appears probable from an examination of those different descriptions. But. it is not necessary, in my opinion, to ascertain this fact; as, from the principle before discussed, it appears evident to me, either that the report is bad in the whole, and is not helped by the acceptance of the court, or that it is good in the whole; and therefore the conditional part is operative to defeat the defendants’ claim under it, if the condition has not been performed.
I am therefore of opinion, that no such judgment is shown in the plea, as bars the commonwealth’s right to prevail in this suit: but that the same is sufficiently answered by the fact set forth in the replication.
I cannot conclude this opinion without remarking upon several resolutions, which have been passed by the legislature during the pendency of this question before the Court, calculated, although I presume not intended, to produce an effect upon the Court, at least so far as to hasten the decision. The question is involved in some intricacy; and not more time has been taken to deliberate upon it, than is usual in regard to questions of importance. Yet the attorney * general has been twice required by [ * 422 ] the legislature to inquire into the causes of the delay, and by the last order to report the reasons, if any exist, why judg snent has not been rendered.
*352 Knowing, as I do, that this suit is prosecuted in the name of the commonwealth for the benefit of individuals, who are settlers on the land in question, I can have no doubt that this importunity has been caused by the applications of those individuals, or their friends, who may think them aggrieved. It is to be regretted, however, that the language of the resolution, which passed in June last, had not been more attended to ; for it carries with it a strong implication, that the legislature had cause to believe there had been some extraordinary and unjustifiable causes, which operated a postponement of the decision of this action. Now, it being of the last importance to the character of the judiciary, and indeed to the interests of the people, that the courts should not only be incapable of being affected in their opinions, even by a manifest indication of the will of the legislature, but should not even be suspected of yielding to such an influence, I deem it my duty, since the judgment of the Court in the case now before us is in favor of the commonwealth, wholly to disavow any view to the probable wishes of the legislate te upon the subject, and to declare my firm belief, that such interference would be wholly without effect upon the mind of any one member of the Court.
Sewall, J.
(stated the substance of the information and pleadings, and proceeded thus.) The question immediately suggested by this demurrer is, the sufficiency of the replication in behalf of the commonwealth, to avoid the plea in bar, or answer of the defendants, to the complaint of intrusion on certain lands of the commonwealth, according to the information filed against the defendants.
Anciently, to an information of intrusion in behalf of the sovereign, brought against a subject,the latter was required to answer [ * 423 ] by showing his title specially; but in several * modern decisions, this prerogative has been relaxed in favor of the subject; and to an information he is permitted to answer as he might when impleaded at the suit of a fellow-subject, by a general denial of the charge of intrusion. This process is in the nature of an action of trespass, and to maintain an information of intrusion in behalf of the sovereign, a title and right of possession are to be proved, as would be required of the plaintiff in an action of trespass. It is sufficient for the defendant, in a process of intrusion, to show a title to the possession ; and a judgment in his favor, in a former complaint of intrusion respecting the same tract of land, amounts at least to a title to the possession, when that is again questioned by the same party. (6)
*353 A verdict is competent evidence, upon a question of fact or of title, when between the same parties the same question is again put in issue in another action. It is also a salutary maxim of the common law, Nemo bis vexari debet pro una et eadem causa. The justice and equity of this maxim, and its importance to the peace and welfare of the community, will not be disputed. A verdict, however, is net incontrovertible evidence, unless it is. sanctioned by a judgment rendered upon it, which continues in force ; and to a plea of a former action in bar of a subsequent suit for the same cause, it is essential, either that the action pleaded is then pending, or that a judgment was rendered upon it, which remains in.full force at the time of the plea pleaded.
A verdict is conclusive evidence, between the same parties, upon the fact decided ; and a former judgment is a bar to a subsequent suit upon the same cause of setion ; even when the judgment rendered upon the verdict, or the judgment offered in bar of a subsequent action, are liable to be arrested for want of form, or to be avoided by writ of error. (7)
A report of referees, accepted by a court of competent jurisdic tian in the subject matter, where a judgment has * been rendered upon it; and also judgments rendered [ * 424 ] upon the awards of referees, according to the immemorial usage in the courts of common law within the territory of this state, have, while they continue in force, the same conclusive effect in subsequent actions and inquiries, where the same complaints and demands are put in issue between the same parties, which verdicts and judgments thereon are allowed to have.
These roles of law, which I have stated, I believe, upon sufficient authority, have not been questioned or disputed in the argument of the case at bar ; and indeed the replication in behalf of the commonwealth supposes the sufficiency of the plea and answer of the defendants, if it is not avoided by the fact alleged, which is to be taken as confessed by the demurrer; namely, that the defendants did not, within the time prescribed in the report of the referees, make and deliver the deed of release required of them by the conditional words annexed to that report; and the inference from this alleged failure is, that the judgment rendered upon that report became thereby null and void, and that, at the time of the plea pleaded, the report of the referees, in the former process of intrusion, is not to be considered as a confirmation or evidence of title, or as decisive of the present suit, although between the same parties ; nor are the present defendants to be considered as impleaded in a cause of *354 action once decided between them and the commonwealth ; because, since the failure of the release required of the defendants, there has been no judgment on the award, or in the suit and process stated at large in their plea. The form existed, but without any substance of a judgment, since the six months from the date of the award expired, no sufficient release having been made and delivered by the defendants within that time.
To show the nullity of the judgment, upon which the defendants rely in their answer or plea, as sufficient to protect them against the present information for the same cause, various errors [*425] in the record and proceedings, and * in the supposed judgment rendered thereon, have been suggested and argued ; but the reliance of the late attorney-general was principally upon the conditional words annexed to the report of the referees, and on the failure of the defendants respecting the deed of release to be executed and delivered within six months from the date of the award.
To the suggestion of errors one general answer has been given on the part of the defendants, which I have thought sufficient, after a careful examination of authorities.
Whether the judgment pleaded was rendered at the proper term of this Court; — Whether it is erroneous, as not being in the form of judgments usually rendered in the courts of common law ; — Whether courts of common law have competent authority to render a con ditional judgment in cases brought before them by informations for intrusion upon the lands of the commonwealth ; — whatever may be the ground of the judgment, or the course taken to effect a decision of the controversy, are inquiries which I shall not now undertake to decide; for, as to all these, and other like objections, this answer has been, and may legally be given, that, however sufficient the supposed errors may be to render a judgment voidable, or to avoid it, if appearing on a writ of error, and to produce a judgment of reversal ; yet no one of them, nor all of them together, can have the effect of rendering the judgment of a court of competent authority, in the case decided, null and void.
The effect of the conditions annexed to the award, upon the judgment ordered to be rendered according to the said report, and entered as a judgment that the title, &.C., be confirmed, agreeable to said report, is the inquiry to which we are led by the replication to the plea in bar.
Different opinions may be entertained upon this question, 1 would hope, without any manifest absurdity or want of discernment. In the first place, is this judgment to be construed a conditional judgment? Two instances have been mentioned of judg *355 merits said to be conditional, which this * Court is com- [ * 42© ] petent to render. One of them is in an action of detinue, where the proceedings are by the course of the common law, admitting of an alternative judgment, which may be called a conditional one. The other is in an action of ejectment, brought upon a mortgage, for the purpose of foreclosure, where a conditional judgment is directed, the form and effect of which have been prescribed by a statute providing in that case; and this is more properly a condition in delay of the execution, than a suspension of the judgment.
But the instances, if at all applicable, seem to be exceptions, rather than examples or proofs of a general rule. In other cases, and more particularly in a judgment consequent upon the decision of a litigated title, where the tract of land in controversy has been awarded, as his fee and right, to one. in exclusion of the other ; not as a bargain or compromise, or upon any special contract between the parties, or as a title accruing upon their mutual stipulations, but as existing in fact and in law, when the controversy commenced respecting it, a conditional judgment seems to be practically unnecessary, and to involve many difficulties and absurdities. In the case at bar, for instance, the authority of the arbitrators was restricted to the two tracts of land which were finally awarded to the Pejepscut proprietors, and to an inquiry whether the title to those lands was in them or the commonwealth. The award of a release respecting another tract of land, not included in the submission, must be considered as justifiable only upon their authority to determine the suit and inquest of office, as it is styled in the proceedings. It is therefore impossible, unless we suppose an assumption by the arbitrators of an authority not within their commission, to consider the award in question as a compromise for the commonwealth, or as a grant of title to the Pejepscut proprietors upon the condition prescribed to them ; certainly not upon the comparatively insignificant consideration of a formal release by them respecting lands, their claim to which, if they pretended any, had been in a * manner voluntarily relinquished by the terms [ * 427 ] of the rule to which they had acceded.
It may be, that the conditional words annexed to the award ought to have prevented a final judgment upon it, until the stipulation had been fulfilled ; and if this had been neglected or refused, or the fulfilment within the time prescribed had been prevented by any inevitable accident, a recommitment of the award might have been a remedy within the discretion of the Court, to be exercised for the purposes of equal justice to the litigant parties, and to obtain an explanation from the referees, as to the period of six months *356 how far it was essential to the title of the Pejepscut proprietors in the lands awarded to them, or to the determination of the suit.
For the purposes of fair and equal justice, a remedy of this kind seems peculiarly requisite, where the party recovering the award was holden by stipulations to his disadvantage, to be enforced in consequence of the recovery : such, for instance, was the stipulation on the part of the Pejepscut proprietors, to release certain parcels of the tract of land awarded to them, which were in the occupation of settlers, for prices to be determined by commissioners. This stipulation has been, it is said, exacted on the part of the commonwealth, in consequence of this award, and fulfilled on the part of the defendants; and they have given releases of title to settlers, for inadequate considerations, as the defendants estimate the lands released ; and the deeds of the defendants are not, perhaps, to be recalled or avoided, although given or exacted, in part at least, upon considerations which will fail entirely, if this award and judgment are void or voidable.
It may be answered, that these inconveniences are incurred upon the proprietors upon their own neglect to tender a sufficient deed of release within the six months, according to the terms of the report. But this is said, on the other hand, to‘ have been an accident, and not a voluntary default.
[ * 428 ] * The facts are not before us upon the allegations of this record, and it is not important to decide the actual state of the case in this view of it. It is enough for the argument I would rest upon, that these consequences are possible, upon the supposition of a conditional judgment, closing the suit to one party, and leaving it open to the other, to be avoided by a matter in pais, and a future election.
If the condition is restricted to the award, and the judgment may be understood as entered, either upon a waiver of the condition, or upon an opinion, that the conditional words annexed to the report were not intended to operate to prevent the final judgment, the judgment may indeed be, in this view of the case, unwarrantable The court may be considered as having exercised their authority erroneously. But the judgment of a superior court may be erroneous, when it is not void, or voidable by plea in a collateral action, but only by writ of error.
The condition expressed in the report is not, as I apprehend it, included in the terms of the judgment. The confirmation by the consideration of the court is to be according to the report; but it is not a necessary construction, that this was to be subject to a condition, which is neither a consideration for the title, nor a limitation *357 of it, in the lands confirmed by the report. And if a conditional judgment is, in a case of this kind, irregular and erroneous, to construe the judgment in question as conditional upon doubtful words, would be contrary to the presumptions and rules of construction, usually applied to judgments, as well as deeds, that doubtful words are to be taken favorably in preservation of the subject matter; ut res magis valeat quam, pereat.
However, even if the condition, notwithstanding these objections, is to be carried into the judgment, still my opinion is, that the neglect of the condition did not operate to render the judgment void, but only voidable. This seems to have been the apprehension of the late Governor Sullivan, while attorney-general; and this apprehension *must be considered as adopted and [ *429 ] confirmed by the legislature, in their resolve proposing the acceptance of a release from the Pejepscut proprietors, after the expiration of the six months, upon certain stipulations foreign to the present inquiry, and remote from the original stipulations made either by the parties or the referees. Proposals of this kind were idle and nugatory, if the judgment became void by the failure, on the part of the Pejepscut proprietors, to deliver a release. For a void judgment is not to be established or restored by any consent or agreement of the parties; but construed as voidable, all the proceedings and proposals consequent upon the award and judgment were consistent and proper.
For another reason, too, which has appeared to me conclusive on this question, I am against considering the judgment pleaded by the defendants as annulled by their neglect to perform the condition supposed to be annexed to it. A void judgment is nothing ; it established no fact, position, or right, upon which either of the nominal parties can validate any claim, exemption, privilege, or beneficial interest. It is, therefore, contradictory, as I apprehend the matter, to say that a judgment is annulled and void, at the election of one of the parties to it. A judgment is sometimes voidable at the election of a party to it; but to be void, there must have been, in the formation of the supposed judgment, some want of jurisdiction, or other original defect; so that, according to the rules of the municipal code, it had never had a legal being.
The doctrine that a judgment becomes void, by the neglect of one of the parties to perform a condition annexed to it, may, in a case that may be supposed, operate to the injury of the party for whose benefit the condition was reserved; and the party neglecting the condition may thus avail himself of his own wrong or default. In the present case, the replication for the commonwealth supposes *358 an election on their part to avoid the judgment pleaded by the defendants. But if the judgment, upon the exception [ * 430 ] *to it, became only voidable at the election of the commonwealth, and not void, the plea is insufficient; for a voidable judgment continues incontrovertible evidence, between the parties to it, of the facts decided by it, and is a bar to another suit upon the same cause of action, until reversed.
Such was the opinion of this Court in the case of M’Neil vs. Bright & Al., (8) when the decision was in favor of the commonwealth, and their title was maintained upon a judgment supposed to have been rendered after the law, authorizing judgments of confiscation, had been annulled by a national treaty. In that decision it is expressly stated, that “ instances, in which judgments of court are void, and may be so considered without reversal, are only where, from the judgment itself, it is apparent that the court itself had not any jurisdiction ; but had exercised that which belonged to. another tribunal.”
The general rule of law is, that the judgment of a superior court is not void, but voidable only upon a writ of error. Thus, where, by an act of parliament, a special subordinate jurisdiction was established, and, to preserve it, provision was made that the judgment of a superior court, in a suit brought therein upon any matter within the special jurisdiction then established, should be void; yet, respecting a judgment rendered in the Common Pleas at Westminster, in a suit brought there upon a matter within the special jurisdiction established by the statute, it was determined that the judgment could not be avoided collaterally, but that it was only voidable by plea or error. (9)
Now, in the case at bar, the strongest implication that can be imagined to arise from the condition annexed to the award, accepted and made the foundation of the judgment pleaded by the defendants, is not stronger than the words in the act of-parliament referred to in the case cited ; — that the judgment in the case provided for should be void; yet, in that case, a judgment within the provision of the act of parliament became only voidable, and was not to be arrested by a collateral plea, but only by a plea or writ of error.
[ * 431 ] * The authority of these decisions has appeared to me conclusive on the only question now to be decided — the sufficiency of the replication; and that is insufficient, if, notwith *359 standing the exception there suggested, and the other exceptions argued, the judgment pleaded by the defendants has effect until reversed and avoided by a writ of error.
Perhaps, upon a writ of error, it would be found that this Court is competent to revise the former proceedings, and to institute a melius inquirendum, if I may use the term, in case the judgment rendered on the award should be found to be erroneous, or voidable, for the neglect of the defendants; notwithstanding the assumption of it as a valid judgment, and the seeming assent to it, in the subsequent proceedings of the legislature in the appointment of commissioners, and in procuring an adjustment for certain settlers, at the expense of the defendants, or of those claiming under them.
I am not prepared to say that the requisitions of the legislature on this subject, stated in their subsequent resolves, are not perfectly reasonable and just. Lands supposed to belong to some persons claiming under the Pejepscut proprietors, and lawfully holden by their allotment and partition, before this controversy commenced, are required to be released by the Pejepscut proprietors to certain occupants and settlers. This may be justifiable upon motives of policy. These extraordinary efforts of the legislature to obtain confirmations of the possessions and improvements of settlers, ought to be more readily complied with by the parties interested. But how far it is practicable for the Pejepscut proprietors to make or procure the confirmations and releases required of them, respecting the lands divided, as well as the lands undivided, when this controversy commenced, may be a question deserving some consideration.
However, in whatever form a revival of the proceedings to determine this important controversy may be had, it is desirable that equal justice may finally obtain, and be established * for the commonwealth and all concerned ; without any [ * 433 ] detriment to those established rules and principles of law, upon which all, who have titles and recover judgments, are disposed to rely; and upon which the quiet and repose of the community at large must depend. Interest reipuhlica ut sit jinia Utium.

Replication adjudged good.

 12 Mod. 588.

 Com. Dig. tit. Prœrog. D. 74. — Mo. 370, 376. — Hard. 230

 Com. Dig. tit. Evidence, A. 5. — 2 Rol. 46. — 1 Sir 308.

 4 Mass. Rep. 303, 304.

 2 Salk. 674, Prigg vs. Adams & Al. — Hall vs. Biggs, 1 Inst. 259.