EUGENIA C. MATHEWS' APPEAL FROM PROBATE.

First Judicial District, Hartford, January Term, 1900.  ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Until the administration account is adjudicated the amount of estate
available for distribution under General Statutes, § 629, cannot be
legally ascertained, and therefore a distribution by the persons in-
terested, before that time, does not oust the Court of Probate of its
jurisdiction to pass upon such account.

Upon an appeal from the refusal of the Court of Probate to pass upon
the administration account, the Superior Court is not obliged to
remand the cause upon disaffirming the action of the lower court,
but has full power as an appellate probate court to go forward and
settle the administration account.

Argued January 2d—decided January 19th, 1900.

APPEAL from an order and decree of the Court of Probate
for the district of Stafford, refusing to pass upon a certain
administration account, taken to the Superior Court in Tol-
land County and reserved by that court, *Robinson, J.*, upon
a finding of facts, for the consideration and advice of this
court.

The material facts in the case are these: Julius Converse
of Stafford in this State died intestate in June, 1892, leaving
a widow, Mira L. Converse, and four children, to wit, Eugenia
C. Mathews, wife of A. B. Mathews of Chicago, Lillia A. Lee,

wife of William Lee, J. Carl Converse, and Louis S. Converse, all of Stafford. In June, 1892, Alvarado Howard and J. M. Sheehan were appointed as administrators of the estate of said deceased, and they at once accepted said appointment and duly qualified. In March, 1893, the administrators filed in court an inventory of the estate, without appraisal. On the 14th of June, 1893, they filed in court a preliminary statement of money received and payments made, with accompanying schedules, which on the same day the court ordered to be recorded and kept on file.

On the 19th day of June, 1893, a paper signed by the widow and the four children aforesaid, who were all the persons interested in the estate, and were all "capable to act," was filed and recorded in said Court of Probate. Said paper purported to be executed under the provisions of § 629 of the General Statutes.

In that paper the parties thereto, among other things, agreed as follows : " That it is desirable and for the best interests of all of us, that a division and distribution of this intestate estate should and ought to be made by mutual agreement by and among us, as is permitted and authorized in such premises " by the statute aforesaid ; " that after the payment of all legal debts of said intestate from the fund made up from cash and the proceeds of the securities belonging to said estate (save as below excepted), we each agree to accept such part of the remainder of said fund as each of us is by law entitled to receive, namely : one third part of such remainder to Mira L. Converse, and one sixth part of such remainder to each " of said four children.

Then follows certain provisions the substance of which may be thus stated : (1) an agreement by each and all of said parties to " accept " the distribution of the shares of the capital stock of four named corporations as set forth in said paper; (2) an agreement as to what the widow should have under the distribution in addition to her share of said capital stock, in which it was also agreed that the administrators should pay to the widow $12,000, " proportionally from the separate shares " of the four children, for the release of her right of

dower in certain real estate; (3) an agreement by the four children as to the division of the real estate, and a statement of the specific real estate to be accepted by each child.

In December, 1894, the administrators filed in said court two certain schedules supplementary to the inventory, one itemizing the entry in the original inventory, "Cash with bankers and brokers $45,000;" and the other itemizing all property "discovered and omitted" from the original inventory.

In March, 1896, Eugenia C. Mathews prayed the court to order the administrators to file their account, and the court ordered them to do so on or before April 10th, 1896. On that day the administrators filed an account in court. This was supplemented and made more specific by schedules thereafter filed by order of court. All of said accounts and schedules were duly filed and recorded. On the first of August, 1896, a hearing was had on the allowance of this account. The court found that said account was "a preliminary account of the distribution of said estate," and ordered it to be kept on file and recorded and made "a part of the final administration account, subject to such corrections of errors and omissions as the court may order and approve." The court further ordered the administrators to file their final administration account on or before the 14th of November, 1896. On said day the administrators filed an administration account in court. On the 15th of October, 1898, the administrators filed in court an account stating that it "contains a true statement of all moneys received and expended by them" as administrators; and that all claims allowed by them against said estate had been discharged.

At the hearing had upon the administration account in November, 1898, the court held "that the adjudication of the accounts filed November 16th, 1896, and October 15th, 1898, is not within the jurisdiction of this court," and decreed accordingly. From this action of the court an appeal was taken by Mrs. Mathews to the Superior Court.

The questions reserved are six in number. The substance of the first five may be stated thus: Whether, after the filing

and recording of the agreement concerning distribution, the Court of Probate had any further jurisdiction over the accounts of the administrators, and if so, to what extent; and the last question is whether the Superior Court on appeal "has jurisdiction over the accounting of the administrators, . . . and if so, to what extent."

*Edward D. Robbins*, for Eugenia C. Mathews.

*Charles E. Perkins*, for the administrators.

TORRANCE, J.  The principal question in this case relates to the operation and effect of the recorded agreement upon the jurisdiction of the Court of Probate, and not to its binding force upon the parties to it.   These two questions are distinct and separate.   If the instrument is binding upon the parties, it does not necessarily follow that it affects the jurisdiction of the court.

The precise claim of the administrators is, in effect, that upon the recording of the agreement, the power of the court, under the circumstances of this case, to adjudicate upon the administration account, was at an end.

We are of the opinion that this claim is without foundation.   Our statute (General Statutes, § 629) provides two modes of distribution: one by appointed distributors, and one by the parties themselves.   This is an ancient statute, originally passed in 1699.   Rev. Statutes, 1808, pp. 265, 266, §§ 12, 13, and notes.   Its language originally was that the agreement of distribution "shall be accepted, and allowed for a settlement of such estate."   This remained the language of the statute until 1875, when it was changed, apparently by the revisers, to this: "shall be a valid distribution of said estate:" Rev. of 1875, p. 372, § 5; and this is the language of the present statute.   The word "settlement" in the earlier, and the words "valid distribution" in the later statute, mean the same thing; they both describe the effect or result of one and the same act in the settlement of estates, namely, that which ascertains and determines the individual

shares of the distributees in and to specific property. Such
an act of distribution when it is in all respects according to
law, ordinarily puts an end to the power of the Court of
Probate over the "estate," and over the property distributed,
save in a few exceptional cases which it is unnecessary to
consider here and now. "It must be admitted, that very
generally the distribution of an estate is the last act of ad-
ministration, and closes the concern." HOSMER, C. J., in
Griswold v. Bigelow, 6 Conn. 258, 266. Distribution by
agreement of the parties is but a substitute for distribution
by appointed distributors. Baxter v. Gay, 14 Conn. 119,
122; Seymour v. Seymour, 22 id. 272. Both are statutory
modes of distribution; and to be effective so as to put an
end to the power of the Court of Probate over the settlement
of the estate and over the property distributed, the require-
ments of the statute must be complied with. Dickinson's Ap-
peal, 54 Conn. 224. When such requirements have been
complied with, the one mode is just as effective and conclu-
sive as the other, and no more so. Before a distribution
valid for all purposes—one that will put an end to the settle-
ment of the estate and the power of the court—can be made
in either of the statutory modes, the estate to be distributed
must be first ascertained by that court, by the settlement of.
the administration account, and the deduction of the ascer-
tained expenses and charges. This is a condition precedent
to such a distribution as will put an end to the jurisdiction
of the Court of Probate over the unsettled administration
account. Edmond v. Canfield, 8 Conn. 87, 90; Davenport v.
Richards, 16 id. 310, 318. This is manifestly so as to the
power of distributors, and the parties have no greater power
in this respect than distributors. Webster v. Merriam, 9
Conn. 225, 229.

It is clearly within the power, and it is the duty, of the
Court of Probate, before final distribution is made in either
of the statutory modes, to ascertain the "estate" to be dis-
tributed, by adjudicating upon and settling the administra-
tion account; and if before this is done the court accepts a
distribution made by its distributors, or records one made by

the parties, its power and its duty, in respect to the administration account, remain as before, and are not affected by such acceptance or recording.

The record in the present case shows that when the agreement in question here was recorded, there had been no settlement of the administration account in the Court of Probate or elsewhere, and that no such settlement has since been had. It also shows that after the agreement was recorded, the estate, or a considerable part of it, was not delivered over to the parties but remained in the hands of the administrators for some years, and for aught that appears is still in their hands, and that they have purported to hold it and deal with it as administrators. It further appears that disputes as to certain items of property of the estate have existed between the distributees and the administrators from the beginning, and that since the agreement was made both the parties and the Court of Probate have made repeated attempts to have the administration accounts settled. Under such circumstances there is nothing in the statute which requires us to hold that the agreement put an end to the jurisdiction of the Court of Probate over the settlement of the accounts.

We have considered the agreement only in respect to its claimed effect upon the jurisdiction of the Court of Probate over the administration account. The question as to its effect and operation upon and between the parties, or otherwise, is not before us and has not been considered.

We think the Court of Probate in November, 1898, had full jurisdiction over the administration accounts and the settlement thereof, as to all matters not previously passed upon by it, whether such matters occurred before or after the record of the agreement.

The remaining question is whether on the appeal in this case from the decree of the Court of Probate denying that it had jurisdiction over the administration account and the settlement thereof, the Superior Court may, on disaffirming that decree, go forward and settle that account, or whether the matter must go back to the Court of Probate for settlement.

Mrs. Mathews applied to the Court of Probate for a settlement of said account, and the court on such application ordered an account to be filed. At the hearing, that court decided that it had no jurisdiction over the settlement of the account. An appeal was taken from that decision to the Superior Court, and the cause is now pending there.

We think that court, as an appellate court of probate, has power to go forward and settle the administration account as fully as the same might have been settled in the Court of Probate, and that the interests of all concerned will be best subserved by such a course.

The Superior Court is advised (1) to disaffirm the decree of the Court of Probate appealed from in this case; and (2) that it has power to go forward and settle the administration account as fully as the same could have been done in the Court of Probate had that court entertained jurisdiction of that account.

Costs in this court will be allowed to the appellant.

In this opinion the other judges concurred.