BESSIE A. REILEY, ADMINISTRATRIX (ESTATE OF EDWARD B. REILEY) ET AL. *vs.* PATRICK HEALEY, ADMINISTRATOR, D.B.N. (ESTATE OF EDWARD B. REILEY).

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 9th—decided October 9th, 1936.

*John H. Cassidy,* for the appellant (plaintiff American Surety Company of New York).

*Clayton L. Klein,* with whom, on the brief, was *John F. McLinden,* for the appellant (named plaintiff).

*Nathaniel R. Bronson,* for the appellant (defendant).

MALTBIE, C. J. The questions presented by the appeals in this case arise out of the proceedings for the settlement of the estate of Edward B. Reiley, who died intestate August 6th, 1929, leaving his wife and a minor son. On August 16th, 1929, his wife was appointed administratrix of his estate, qualified by furnishing a bond, upon which an attorney in Waterbury became surety, and proceeded with the settlement of the estate. On December 18th, 1930, the attorney was relieved as surety and a new bond given wherein the American Surety Company became surety. The Waterbury Trust Company filed a claim against the estate which was disallowed; the company instituted an action to recover the claim and on June 18th, 1932, recovered judgment for $22,672.50. Meanwhile it had made application to the Court of Probate to remove the administratrix or require her to furnish an additional bond, and on April 3d, 1933, the Court of Probate ordered an additional bond to be filed. The administratrix failed to do this and on July 29th, 1933, she was removed as administratrix, and Patrick Healey was appointed and qualified as administrator d. b. n. On June 30th, 1934, the administratrix filed a final account and at a hearing held on August 8th, 1934, the

Court of Probate disallowed it. An appeal was taken
from that decree by the administratrix and by the
American Surety Company to the Superior Court.
There the Surety Company filed what purported to
be an account of. the administratrix and prayed the
Superior Court, sitting as a probate court, to allow
it and render judgment accordingly. Subsequent pro-
ceedings in that court were based upon this account.
Judgment was entered confirming the action of the
Court of Probate in disallowing the account filed with
it, and stating a final account of the administratrix
which was adjudged to be correct. From that judg-
ment the administratrix, the Surety Company, and the
administrator d. b. n. have appealed, the first two from
a disallowance of certain credits claimed by the admin-
istratrix, and the last from the allowance of certain
credits to her.

All the items in dispute, except two, grow out of
transactions of the administratrix with the Citizens-
Manufacturers National Bank. At his death the de-
cedent was indebted to it to the amount of $49,165 and
it held collateral to secure that debt of an "appraised
value"—which we take to mean, as appraised in the
inventory of the estate—of $69,559.50. Just before
his death he had ordered, through it, one hundred and
ninety-eight shares of stock of the Sterling Securities
Company, worth at his death $4752; on October 8th,
1929, the administratrix turned this stock over to the
bank; and it sold it for $5733.60 and applied this sum
to reduce the debt. Then came the stock market crash
and the value of the collateral held by the bank fell
rapidly. In the beginning of 1930 it made frequent
calls upon the administratrix for more collateral,
threatening that unless it was furnished or the debt
reduced it would sell the securities in its hands and
apply the proceeds to the debt. The administratrix

called at the bank several times urging it not to sell them, but did not furnish any additional collateral. On April 11th, 1930, the bank sold certain shares of the stock it held and reduced the debt by the amount realized. Thereafter at various times before October 1st, 1930, the administratrix turned over to the bank shares of stock belonging to the estate, as additional collateral. The bank continued to make further demands upon her, with the result that on December 19th, 1930, she assigned to it five savings-bank accounts which were a part of the estate, amounting in all to $12,813.10. As the administratrix, in response to its continued demands, neither furnished further collateral nor made any payments on the debt, the bank at several times on or before August 1st, 1931, withdrew the amounts in the accounts except one in the Merchants Trust Company and applied the money upon the indebtedness.

On October 3d, 1931, the bank made a strongly-worded written demand upon the administratrix either to furnish more collateral to the amount of $5000 or reduce the debt, threatening to liquidate the indebtedness by the sale of the collateral unless she did so on or before October 5th, 1931. As a result, on October 6th, 1931, she paid to the bank, to be applied on the debt, $2500 of her own funds. This left as the amount of the debt, $22,609.79. Until July 6th, 1932, the administratrix continued to pay to the bank interest upon the indebtedness, the payments until and including October 1st, 1930, amounting to $3201.82, and those thereafter made, to $3232.92. When the administratrix was removed, the bank held as collateral securities of an "appraised value" of $66,145.80, including the stock turned over to it by the administratrix, except the Sterling Securities stock which it had sold, and also the assignment of the savings-bank account

in the Merchants Trust Company, which amounted to $3245.23. The Merchants Trust Company went into receivership and after the removal of the administratrix the bank, through Home Loan bonds which it took in lieu of the deposit and sold, realized $2200, which it applied on the debt. While the proceedings were pending in the Superior Court the bank sold several items of the stock held by it, liquidating the debt, and delivered to the administrator d. b. n. the rest of the collateral, which included most or all of the securities furnished it by the administratrix.

The trial court has found that the administratrix acted at all times in good faith, for what she thought were the best interests of the estate; but that she was inexperienced in business, consulted no one who was experienced, and made no application to the Court of Probate for advice or approval of her acts; that she relied solely upon her own judgment and that of a woman who had been stenographer in her husband's office, to whom she left both the bookkeeping and actual management of the estate; that in furnishing the additional collateral to the bank and continuing to pay interest after October 1st, 1930, she seriously jeopardized the interests of the general creditors and in fact gave preference to the bank; that after October 1st, 1930, a reasonably prudent investor would have requested the bank to sell the collateral it held and apply the proceeds upon the debt; and that the reasonable period for the final liquidation of the estate did not extend beyond a period of fourteen months, although the estate could not be settled within the time because of the pendency of the action brought by the Waterbury Trust Company upon its claim.

While the reasons of appeal raise other questions, the only claimed errors of the trial court as far as concerns the dealings of the administratrix with the

bank which are pressed upon the brief, are in regard to these items: The trial court allowed the administratrix credit for the amount realized by the bank upon the sale of the Sterling Securities Company stock; it did not allow her credit for the savings-bank accounts which were assigned to the bank as collateral after October 1st, 1930, nor for the payment made from her personal funds after that date; it allowed her credit for the interest payments made to the bank before that date; but it did not allow credit for those thereafter made.

As the trial court pointed out, the administratrix could not finally settle the estate as long as the action by the Waterbury Trust Company upon its claim was pending; but that did not prevent her at an earlier date from taking steps to have liquidated the indebtedness to the Citizens-Manufacturers National Bank or from refusing to deliver to it further collateral or pay interest on the debt, thus leaving the bank to realize upon the securities it held. The administratrix was a fiduciary for creditors as well as heirs of the estate. *Hewitt* v. *Sanborn*, 103 Conn. 352, 378, 130 Atl. 472. In her dealings with the estate she was bound to exercise that care and prudence which an ordinarily prudent person would who was entrusted with the management of like property for another. *Beardsley* v. *Bridgeport Protestant Orphan Asylum*, 76 Conn. 560, 564, 57 Atl. 165; *New Haven Trust Co.* v. *Doherty*, 75 Conn. 555, 559, 54 Atl. 209. The securities held by the bank belonged to the estate but were subject to the right of the bank to hold and use them to secure payment of the debt. *Mathews* v. *Sheehan*, 76 Conn. 654, 660, 57 Atl. 694. Those securities apparently had at the time the stock of the Sterling Securities Company was delivered to the bank, a value considerably in excess of the amount of the debt. The

delivery of the Sterling Securities stock was apparently made in order that the proceeds of the sale might be used to reduce the debt, with a view ultimately to discharge it and so release the collateral to the estate. There is nothing in the record to suggest that the act of the administratrix in using the stock to reduce the debt was not entirely proper. The trial court did not err in allowing her credit for this item.

Whether she should have furnished further collateral to the bank and continued paying interest upon the debt would depend upon the answer to the question whether ordinary prudence would dictate that she preserve an opportunity to recover the securities or some part of them by taking such steps as would induce the bank to hold the collateral instead of disposing of it in order to liquidate the debt. *Peck* v. *Searle,* 117 Conn. 573, 579, 169 Atl. 602. The trial court in effect found that in the exercise of proper care and prudence she might reasonably until October 1st, 1930, have used the funds of the estate for that purpose, but that after that date it was not the exercise of proper prudence to have done so. If this finding was properly made it justifies the action of the trial court with reference to the disallowance of the credits of which the administratrix complains.

The administratrix attacks this finding, but she has not brought before us the evidence offered at the trial and we cannot review it to determine whether the finding was reasonably and legally supported by that evidence. We may, however, test it by the other facts found and may consult the memorandum of decision to determine the grounds upon which it rested; *Burk* v. *Corrado,* 116 Conn. 511, 513, 165 Atl. 682; and if it appears that the court made the finding upon the basis of facts not proven or of considerations not relevant and material or in the absence of proof of some

element in the situation necessarily to be considered, it cannot stand. *Farrell* v. *Waterbury Horse R. Co.*, 60 Conn. 239, 257, 21 Atl. 675; *Tarlov* v. *Adams*, 97 Conn. 412, 413, 117 Atl. 3.

The rationale of the decision of the trial court as deduced from its memorandum of decision and finding was this: When the general depression came in the fall of 1929 the administratrix was confronted with a situation of rapidly falling values and did what many other investors did at that time, attempted to preserve the securities for the estate; but when, after the lapse of the fourteen months, which the trial court fixed as a reasonable time, she continued her efforts to preserve the securities by advancing further collateral, using her own funds and paying interest upon the loan, she entered into a speculative enterprise at the expense of the estate; that it was one thing to have pledged additional securities in the fall of 1929 to preserve assets of the estate when it was amply able to pay all claims admitted and contingent, and another to exhaust the few remaining securities over a year later for a like purpose; that she had no right to "speculate" with the securities of the estate; that as a reasonably prudent person she should have given some thought at the time, which she apparently did not, to the rights of the distributees; that she should have consulted someone versed in business with reference to the proper course to take or made some application to the Court of Probate for approval of her conduct; and that her conduct seriously jeopardized the interests of the general creditors.

These statements must be taken as the controlling considerations which led the trial court to its finding that the administratrix was guilty of negligence in turning over to the Citizens-Manufacturers Bank the savings accounts in December, 1930, and in continu-

ing to pay interest to it after October of that year. The fact that the administratrix did not consult persons experienced in business or in some way seek the approval of the Court of Probate did not establish a breach of duty upon her part; if she did what a person of ordinary prudence situated as she was would have done, her failure to secure advice would not of itself constitute negligence; if she had secured and followed such advice, that fact might have been an element in determining whether she was negligent but it would not necessarily have established the exercise of proper care on her part; *New Haven Trust Co.* v. *Doherty,* 75 Conn. 555, 563, 54 Atl. 209; 3 Bogert, Trusts & Trustees, pp. 1710, 1941; the question was, did her acts in fact measure up to the standard of care required of her?

The purpose of the delivery of securities and payments of interest to the bank was not to pay a creditor but to preserve assets of the estate; it does not appear that at any time the bank did not have in its hands sufficient assets to pay the debt if it realized upon them; it apparently never presented a claim against the estate; and the further advances of collateral and the payments of interest could not properly be regarded as in any sense a preference given a creditor. The weakness of the other grounds of the decision is that the facts necessary to support them are not found. Whether the conduct of the administratrix was speculative in its nature would depend largely upon the answer to the question whether she had a reasonable expectation that security values would rise in the near future and there is no finding in regard to this. It appears that the administratrix did pay claims amounting to $4323.37, but whether before or after October 1st, 1930, does not appear; these were apparently all the claims presented against the estate except that of

the Waterbury Trust Company; and whether on December 19th, 1930, and thereafter there remained sufficient assets in the estate to pay the Waterbury Trust Company's claim, if it should be established, is left wholly problematical; thus the record affords no basis for the statement that the furnishing of additional collateral on that day and payments of interest thereafter seriously jeopardized the claims of general creditors. The only distributees were the administratrix and her minor son, and that she did not have in mind her own interest and his can hardly be assumed, as the trial court seems to have done. Moreover, nowhere in the finding is it stated what was the margin of value of the securities held by the bank above the amount of the debt, which would be an important consideration in determining whether the administratrix used reasonable care in her efforts to preserve the assets. The reasons given by the trial court for its finding that the administratrix was negligent so fail of support in the record that the finding cannot stand.

It follows that there was error in the disallowance by the trial court of credits to the administratrix for the amount of the savings accounts turned over to the bank and the interest paid to it, after October 1st, 1930. As the trial court was not justified in fixing upon that day as the time beyond which no credits could be allowed for such payments, the amount of such credits to be allowed may be affected by a consideration of the facts which the trial court ought properly to regard; hence the ruling of the trial court allowing interest payments before that date, of which the administrator d. b. n. complains, necessarily falls with that disallowing these credits. So, also, does the ruling disallowing to her the $2500 advanced from her own funds, after October 1st, 1930; if she was justified at that time in paying that amount to the bank to

preserve the rights of the estate in the collateral, it is of no consequence as regards its allowance to her that it came from her own funds rather than from funds of the estate. *Hewitt* v. *Beattie,* 106 Conn. 602, 613, 138 Atl. 795.

The other two items of which complaint is made are the allowance to the administratrix of the amount she paid certain creditors in discharge of their claims and the continued payments by her of the widow's allowance. As far as the first item is concerned, unless the estate becomes insolvent, all creditors are entitled to payment in full and in the absence of a proper decree of the Court of Probate that it is insolvent, there is no basis for the disallowance of these payments at this time. *Peoples Bank & Trust Co.* v. *Seydel,* 94 Conn. 526, 530, 109 Atl. 861. It is true, as the administrator d. b. n. claims, that an administrator who pays certain claims in full before the final settlement of the estate does so at the risk, if the estate later proves insolvent, of having to make good to it any sums necessary to provide a pro rata distribution among all claims, though he may have a right to enforce the restoration to the estate by the creditors so paid of any overpayments. *Peoples Bank & Trust Co.* v. *Seydel,* supra, p. 532. Where the original administrator settles the estate, this liability can be easily enforced.

The situation is more difficult where the administrator, having paid certain claims in full, is removed and so under a duty to file an account of his administration. The allowance of such an account, where no appeal is taken, fixes his rights and liabilities. *Marks' Appeal,* 116 Conn. 58, 63, 163 Atl. 600; 1 Cleaveland, Hewitt & Clark, Connecticut Probate Law & Practice, § 135 (d). If, in such a case as this, the entire amounts paid creditors are allowed, there would be no further

liability on the part of the administratrix to reimburse the estate for over-payments, if it ultimately proved insolvent. If, on the other hand, all payments to creditors were disallowed, an injustice would very likely be done to the administratrix. Nor is the situation one that can properly be met by allowing the account merely as an interim account. Of such an account we said in *Mix's Appeal*, 35 Conn. 121, 122: "A distinction is to be observed between orders and decrees made during the settlement of an estate, which are merely *preparatory* to a final settlement and distribution, and a final decree adjusting and closing the administration account. The latter only possesses the elements of a final judgment; the former are preliminary, and subject to change or modification, as the exigencies of the case and the demands of justice may require." See also *Clement's Appeal,* 49 Conn. 519, 534; *Potter's Appeal,* 56 Conn. 120, 12 Atl. 513; *Beattie* v. *Hewitt,* 114 Conn. 689, 692, 159 Atl. 890. To treat the account before us as an interim account would not give to it that finality which is necessary in the case of an accounting by an administrator who is removed, made before the estate can be settled. Here there has apparently been full notice to all parties concerned and the account has been treated as a final one, which will conclude the rights of the parties.

The statement as to the power of a court to render a conditional judgment made in the early case of *Commonwealth* v. *Pejepscut Proprietors,* 7 Mass. 399, 414, is applicable here: "It seems to me that it ought to depend on the subject-matter of a judgment, and the purpose to be effected by it, what should be its form. And why should a court be restrained by any artificial rule, from the power of doing justice between parties?" The amount paid creditors by the administratrix should be credited to her in this account and

the account should be allowed, when corrected, as a final account determinative of the rights of the parties except as regards the duty of the administratrix to account further to the estate for any sum she may ultimately be found to be liable to restore to it because of the payments made by her to satisfy the claims of the creditors.

The trial court based its allowance of the amount paid to the administratrix as widow's allowance upon the fact that the order of the Court of Probate authorizing it, which it held to be in the nature of a judgment, had never been rescinded. This was taking too narrow a view of the duty of the administratrix. Such an order is of course subject to change or rescission at any time by the Court of Probate. The responsibility for procuring from a judge of probate such orders as are necessary for the proper and speedy settlement of the estate rests upon an administrator; and a failure to do this is a breach of duty on his part, rendering him liable for any loss to the estate thereby resulting. *Rowland* v. *Isaacs,* 15 Conn. 115, 122; *Davenport* v. *Richards,* 16 Conn. 310, 320. "In the settlement of an estate the responsibility rests upon the executor to see, so far as is in his power, that everything is properly done by the Court of Probate as well as by himself. Even a neglect to procure the necessary decrees from the Court of Probate has been held to be a breach of the probate bond." *Moore* v. *Holmes,* 32 Conn. 553, 561. There might be a case where an administratrix would be liable to account for the amount she has received as a widow's allowance before the estate was settled, despite the fact that the order making it had never been rescinded; as, for instance, where she has kept the estate open beyond the time when it ought to have been settled, in order to secure the allowance for herself. Where, however, the estate is

not ready to be settled, the situation is more difficult. The estate has not been legally damaged, unless the Court of Probate would in its discretion have discontinued the allowance, had the matter been brought to its attention.

Ordinarily, where a Court of Probate has refused to allow an account as a whole and an appeal has been taken, the Superior Court may, so far as it can without exercising a power vested exclusively in the Court of Probate, proceed to settle the account. *Mathews' Appeal*, 72 Conn. 555, 45 Atl. 170. But the Superior Court cannot exercise a discretion vested in the Court of Probate; it can only review the exercise of that discretion to determine whether it has been reasonably and legally exercised. *Carroll* v. *Arnold*, 107 Conn. 535, 542, 141 Atl. 657. The Superior Court cannot exercise a primary jurisdiction which by the statute is reposed in the Courts of Probate. *Home Trust Co.* v. *Beard*, 116 Conn. 396, 400, 165 Atl. 208; *State* v. *Blake*, 69 Conn. 64, 78, 36 Atl. 1019. If the Superior Court had determined that at some time the situation of the estate was such that, had the matter been brought to the attention of the Court of Probate, it could not reasonably have done otherwise than to make an order terminating the allowance, it may be that the Superior Court might have refused her credit for payments made after that time. The allowance in this case was for the support of the decedent's widow and family; as the family consisted of the wife and minor son and they were the sole distributees of the estate, the continuance of the allowance at least until the claims of creditors would be affected might be justified; and as we have pointed out, the record does not show that even at the time of the trial, this was so. There seems no basis upon which the Superior Court could have disallowed the credit upon the record as it

stands. In such a situation the trial court might no doubt, if it found adequate reason, have settled the account so far as it could properly do so and, with a statement of principles of law applicable, left to the Court of Probate the question of the allowance or disallowance of credit for the amount paid by the administratrix to herself by way of allowance. *Case* v. *Case,* Kirby, 284. As there must in any event be a new trial, it is not necessary to consider this matter further.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.