ELLA S. WILLIAMS *vs.* FRANKLIN A. TAYLOR, ADMINISTRATOR, ET ALS.

* First Judicial District, Hartford, May Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A will provided that certain stock in a corporation, being a majority interest, should be held by the executor to pay out of the dividends a certain amount annually to the testator's widow, and divide the balance equally among his three children who took also the residue of the estate in equal shares. The executor proceeded to settle the estate, and the Court of Probate in due time allowed

* Transferred from the third judicial district.

Williams *v.* Taylor.

a final account, which showed the payment of all debts and expenses, and the payment to the legatees of all the assets of the estate other than the stock, which was described in the accounts as "to be held in trust," and the other property in which the widow had a life estate. Thereafter the executor filed accounts as trustee charging himself with the stock as trust property, which accounts were accepted. The executor having died, an administrator was appointed, who caused a certificate for the shares of stock to be issued to himself as such administrator, and filed an account charging himself with them. An application was afterward, and after the death of the widow, made by one of the surviving children for the sale of the stock, which was opposed by another child, in whose immediate family were held shares of stock in the same company, sufficient, with the proportionate part of the stock held by the estate coming to her on the distribution of the stock itself, to give a controlling interest in the corporation. The shares of stock held by the estate were worth $60,000 if divided, but if sold in a block so as to insure control of the corporation, were worth $100,000. *Held* that an order of sale should not be passed, as, while it would benefit one of the children and the representatives of another, it would injure the remaining child.

Whether, by the language of the will, the children took the stock specifically, *quære.*

Whether the estate had been so fully settled that the stock was no longer subject to sale upon the application, *quære.*

In the distribution of an estate there is nothing to prevent a division of shares of stock in fractional parts.

Submitted on briefs May 12th—decided August 3d, 1908.

APPEAL from a decree of the Court of Probate for the district of Waterbury denying the plaintiff's application for an order of sale of 409 shares of the capital stock of the Apothecaries Hall Company alleged to belong to the estate of Archibald E. Rice, deceased, taken to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judgment rendered in favor of the appellee Mary B. R. Munson, and appeal by the original appellant, Ella S. Williams. *No error.*

*Charles G. Root,* for the original appellant (plaintiff).

*Lucien F. Burpee* and *Terrence F. Carmody,* for the appellee (defendant Mary B. R. Munson).

HALL, J. Archibald E. Rice, late of Waterbury, died testate in March, 1893, leaving a widow, Sarah H. Rice, and three children, Frederick B. Rice, Mary B. Munson, and Ella S. Williams. His estate was inventoried at $89,726.83, consisting of the homestead, described in the second clause of his will, of the value of $15,000, and personal property of the value of $74,591.31, which included 409 shares of the stock of the Apothecaries Hall Company, a corporation located in Waterbury, with a capital stock of 800 shares of the par value of $25 each, appraised in said inventory at $30,675, and household furniture appraised at $150.

The following are provisions of the testator's will, of which said Frederick B. Rice was the executor :—

" 2d. I give, devise and bequeath to my wife, Sarah Houghton Rice, the sum of thirteen hundred ($1,300) dollars per year, the same to be paid quarterly for and during her natural life ; and do further give to my said wife the personal use of my dwelling house, No. 83 Grand Street, together with the household furniture, pictures and books therein contained, so long as she shall desire personally to occupy the same.

" 3d. I direct that my executor hereinafter named, shall hold and possess my stock in The Apothecaries Hall Company, and from the dividends thereon, to pay said sum of thirteen hundred ($1,300) dollars to my said wife and the surplus of said dividends to divide annually among my three children hereinafter named, share and share alike.

" 4th. I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my three children, Mary B. Munson, Frederick B. Rice and Ella S. Williams, share and share alike, to be to them and to their respective heirs and assigns forever."

Frederick B. Rice proceeded to settle said estate, and on February 8th, 1894, presented his administration account to the Court of Probate, which was allowed and was not appealed from, showing the payment of all the debts and the expenses of settlement of the estate, and payment to

the legatees under the will, of the remainder of the estate, excepting said homestead and furniture and said 409 shares of stock and $56.64 in cash, which property and money are described in the account as " to be held in trust."

On the 20th of May, 1895, said Frederick B. Rice filed an account of " F. B. Rice, Trustee, Estate of A. E. Rice," in which he charged himself with the trust property shown to have been in his hands upon the settlement of his executor's account of February 8th, 1894, and on the 31st of January, 1901, filed a trustee account of said estate in which he charged himself with the Apothecaries Hall Company stock and other trust property; both of which accounts were accepted by the Court of Probate.

Frederick B. Rice died March 28th, 1893, and Archibald E. Rice and Helen M. Rice are his executors and sole devisees and legatees.

Sarah H. Rice, the widow of the testator Archibald E. Rice, died in October, 1906.

On the 17th of July, 1906, upon the application of the appellant, Ella S. Williams, the Court of Probate appointed Franklin A. Taylor administrator *d. b. n. c. t. a.* of the estate of said testator Archibald E. Rice, and said Taylor thereupon caused a certificate of said 409 shares of stock to be issued to himself, as such administrator, and on the 28th of August, 1907, when ordered by the Court of Probate upon the application of the appellee Mary B. Munson, filed an account in which he charged himself with the 409 shares of Apothecaries Hall Company stock at $102,250, the homestead at $20,000, and the furniture at $150.

On the 20th of March, 1907, the appellant, Ella S. Williams, made a written application to the Court of Probate, alleging that said 409 shares of the stock of the Apothecaries Hall Company belonged to the estate of Archibald E. Rice; that said Taylor was administrator and trustee thereof; that it was necessary to sell said stock to settle said estate; that if sold in a block it was worth $100,000; that such a sale would best promote the interest of the .owners thereof and of the estate,—and asking for an order

for the sale of the same, as one block of stock. This application was denied by the Court of Probate, and said applicant appealed to the Superior Court.

Upon the trial of the appeal in the Superior Court these facts appeared: At the time of the death of Archibald E. Rice's widow, Sarah H. Rice, the appellee Mary B. Munson, and her two daughters, and Isaac P. Kellogg, the husband of one of said daughters, already owned 276 other shares of the stock of said Apothecaries Hall Company, and therefore the distribution to Mary B. Munson of one third of the 409 shares left by her father would make her and her said family owners of a majority of all the stock of the company. Said Isaac P. Kellogg has for some years been a director and the president and general manager of said Apothecaries Hall Company, at a salary of $3,000 a year. Archibald E. and Helen Rice, representatives of Frederick B. Rice, deceased, also requested that the order of sale applied for should be made, and they and the appellant, Ella S. Williams, stated in substance at the trial that if the 409 shares in the hands of the trustee and administrator should be sold as one block of stock, thus giving to the purchaser of them a majority of the stock of said company, they would pay $100,000 for it, but that if said shares should be distributed to the legatees in three parcels they would sell the stock received by them at the rate of 409 shares for $60,000, that is, $40,000 for the two thirds of said shares which they would together receive; and the trial court adopted these as the respective values of the 409 shares in the hands of the administrator and trustee if so sold as one block, and if distributed in three lots, and held uncombined with other stock, sufficient to make a majority of all the stock of the company.

The trial court held that it was not necessary to sell said stock in order to settle the estate; that it was not for the best interest of the estate that it should be sold, and that it was not now subject to sale at the order of the Court of Probate, and rendered judgment dismissing the appeal.

While we recognize the force of the arguments in sup-

port of the appellee's claims (1) that the provision of the third clause of the will requiring the executor to hold this stock during the life of the widow, and to pay the surplus of the dividends, over $1,300, to the children equally, read in connection with the fourth clause giving the residue to the three children equally, indicates an intention of the testator that this particular stock should be divided equally among them upon the death of their mother; and (2) that since it appears from the executor's accepted final account that the debts and bequests, except of the remainder in the trust property, have been fully paid, and that the stock in question has been delivered by the executor to the trustee and can no longer be subject to sale as a part of the testator's estate,—we find it unnecessary, in sustaining the judgment of the trial court, to place our decision upon either of these grounds, and shall assume, for the purposes of this case, that the 409 shares of stock were not specifically bequeathed in remainder to the three children of the testator, and also that they are still a part of the estate of Archibald E. Rice.

Section 352 of the General Statutes, under which the application for an order of sale is made, provides that the Court of Probate before the final settlement of any estate may order the sale of personal property, if it shall find it for the interest of such estate. The trial court has held that it was not for the best interest of the estate of the testator that the sale asked for should be made. Unless this conclusion is inconsistent with the facts found, it is sufficient to support the judgment.

It is said, first, by the appellant, that the sale asked for is for the best interest of the estate because it is necessary that a sale should be made to enable the administrator to distribute the 409 shares equally among the three children of the testator. This is not so. There is nothing to prevent Mr. Taylor, who is both administrator and trustee and in whose name the stock stands, from transferring 136⅓ shares of it to each of the two surviving children of the testator and to the representatives of the deceased child.

Again, the appellant argues that since the court has found that if sold in a block the 409 shares is worth $100,000, but if distributed and not combined with other stock it would be worth but $60,000, it necessarily follows that the proposed sale would be for the best interest of the estate, inasmuch as thereby the two living legatees and the representatives of the third would each receive $13,000 more in money than they would if the stock should be distributed. This argument is fallacious. The offer to pay $100,000 for the 409 shares is practically made by two of the legatees, the appellant, Mrs. Williams, and the representatives of Frederick B. Rice. If they make the purchase, since there are no creditors, they will, as legatees of the residue of the estate, receive two thirds of the avails of the sale. To the extent of two thirds of the 409 shares they will, in a sense, be buying what belongs to them, and they will receive back what they pay for it. If they make the purchase at the price named, they will really be only paying Mrs. Munson $33,333.33, which is the real value as found by the court of one third of the 409 shares when sold as one block. But by such so-called purchase the remaining two thirds of the 409 shares which they receive and which, if distributed to them, would be worth but $40,000, will become worth $66,666.66. But while these two purchasers will be thus benefited by such sale, Mrs. Munson and her family will be injured to the same extent that such purchasers will be benefited; for the reason that from Mrs. Munson's failure to obtain her one third of the 409 shares, the value of the 276 shares which she and her family now hold, will be worth some $26,000 less than it would be if the 409 shares should be distributed to the three legatees.

The same result would follow as to the gain of these two legatees and the loss of the other, if the appellee should be compelled to purchase herself the 409 shares for $100,000, or if some third party should buy it at that price. If the appellee should make the purchase, she would have to pay $66,666.66 for the two thirds of the

409 shares, which, if distributed to the two other legatees, would be worth to them but $40,000, and which, when purchased by her, would be worth no more than the latter sum, since she would require no part of it to give her the control of the entire stock of the company. If a third party should make the purchase, the appellee would be deprived of more than $26,000, which would have been the increased value of her present holdings if the stock had been distributed, and the other two legatees would be gainers to the same amount.

The application for an order to sell is not made by the administrator, but by one of the legatees. If granted, it would in effect compel the appellee to either sell her interest in her father's estate at a loss, or buy that of the other legatees at the same loss. The sale would be for the best interest of the estate in no other way than it would benefit two of the three legatees to the extent that it would injure the third. By a distribution of the stock complete justice will be done to all the legatees. Upon the facts found the court would not have been justified in granting the order asked for.

There is no error in the judgment dismissing the appeal.

In this opinion the other judges concurred.