S. Victor Prince, Guardian ad litem, et al. v. Ina B. Sheffield et al., Executors (Estate of Lucius T. Sheffield)

King, C. J., Alcorn, House, Thim and Ryan, Js.

Argued May 8—decided June 17, 1969

*David Hartfield, Jr.,* of the New York bar, with whom was *Robert W. Marrion,* for the appellants (plaintiffs).

*Francis F. McGuire,* for the appellees (defendants).

KING, C. J. Lucius Tracy Sheffield died on April 28, 1966, a resident of New London, leaving a will dated May 31, 1961, which was admitted to probate

on May 23, 1966. Under the will, as amended by a codicil, the testator's widow, Ina B. Sheffield, and Leonard B. Johnson were named executors and were also named trustees under a testamentary trust comprising the residue of the estate. Johnson is a director of each of the two Sheffield companies, hereinafter more particularly described, and is a partner in an accounting firm which is auditor, accountant and tax consultant of each company.

Under the will, Mrs. Sheffield was given a legacy of $50,000 and the income, for life, of the trust except for an allowance, not exceeding a total of $5000 apiece, for the education of four of the testator's grandchildren. Upon the death of Mrs. Sheffield, the corpus of the trust was given to five of the testator's grandchildren, 3/23 to Ina Rebecca Sheffield and 5/23 to each of the other four, Thomas C. Sheffield, Jr., Tracy Kyle Sheffield, Stephen Frederick Sheffield, and Chaney Morgan Sheffield. It does not appear that any child of the decedent survived him.

In article 7 of the will, the testator authorized the executors "to sell, mortgage, lease and convey any real and personal property that may at any time form a part of my estate upon such terms and conditions as to them shall seem advisable". Broad powers of sale and investment were also given the trustees, as such, in subsections (a) and (d) of article 4 of the will.

The appraised value of the estate was somewhat over $1,600,000. Of this, nearly $350,000 was in the form of generally marketable securities. In addition, the estate owned one-half of the entire capital stock of each of two family corporations, The Sheffield Tube Corporation and The Sheffield Company. The stock in these two corporations, together, was appraised at a total value of $1,300,000.

Claims allowed against the estate amounted to over $118,000, the Connecticut succession tax amounts to about $125,000, and the federal estate tax amounts to over $371,000. Both taxes became due and payable nearly two years ago. The administration expenses amount to about $130,000. Thus, the total obligations of the estate, exclusive of any interest accrued thereon, amount to about $750,000.

The testator owned 1250 shares (one-half) of the capital stock of The Sheffield Tube Corporation and fifty shares (one-half) of the capital stock of The Sheffield Company. The decedent's brother, Washington Kyle Sheffield, owns the other half of the stock of The Sheffield Tube Corporation, and his son, Peter Kyle Sheffield, owns the other half of the stock of The Sheffield Company.

The Sheffield Tube Corporation principally manufactures metal container tubes for products such as toothpaste and cosmetics, while The Sheffield Company is primarily a sales organization for The Sheffield Tube Corporation. As far as facilities and personnel are concerned, both companies are integrated with each other. Included in the assets of The Sheffield Tube Corporation are shares of generally marketable stock of various corporations.

It is obvious that the executors were faced not only with a frozen estate grossly deficient in liquid assets but with the necessity for disposition of at least some of the stock of the Sheffield companies in order to raise the necessary funds for the payment of the debts, charges and taxes. In fact, the estate receives no income from the shares of stock it holds in either of the Sheffield companies. No provision of the will indicated an awareness on the part of the testator that this critical situation was practically certain to arise. The obvious difficulty

in the way of selling a one-half stock ownership in even a successful family business corporation, especially when the entire other half is owned by what amounts to one individual, needs no comment. Any purchaser except the owner of the other one-half interest, or one intimately allied with him, would be purchasing litigation in a contest for ultimate control. It is in this setting that the action of the Probate Court in approving the proposed sale must be judged.

One of the plaintiffs is S. Victor Prince, as guardian ad litem of Stephen Frederick Sheffield and Chaney Morgan Sheffield, both of whom were minors at the date of the institution of this action and each of whom, as already pointed out, was one of the five remainder beneficiaries of the trust. Stephen Frederick Sheffield reached his majority, and was added as an individual party plaintiff, on April 6, 1968. The other three remainder beneficiaries apparently did not join the two plaintiffs in this appeal. See 1 Locke & Kohn, Conn. Probate Practice § 206.

The defendant executors, after about a year of negotiations, finally entered into agreements, on August 18, 1967, between the estate and each of the Sheffield companies, providing for the sale of all of the estate's stock in both corporations for an aggregate price of $1,300,000, part of the purchase price to be payable over a period of fifteen years. Each agreement contained a provision which would permit the estate to withdraw from it if an appeal from probate, such as that of the plaintiffs, was taken.

On August 21, 1967, the executors filed the agreements of sale in the Probate Court with an application for approval under the provisions of General Statutes § 45-236. On August 22, 1967, copies of

the agreements of sale were sent to the plaintiffs' counsel. On August 24, pursuant to the court's order, notice of the time and place of hearing on the application was given to the plaintiffs and all other remaindermen. The probate hearing was continued from time to time for about two months until November 3, 1967, when all parties appeared in court. After due hearing, the Probate Court ordered that the executors be authorized and empowered to sell the 1250 shares of stock in The Sheffield Tube Corporation and the fifty shares of stock in The Sheffield Company in accordance with the terms of the agreements of sale as on file in the Probate Court. From this order the plaintiffs appealed to the Superior Court, and the matter was referred to a state referee, who, pursuant to § 6 of article fifth of the Connecticut constitution and §§ 52-434 and 52-434a of the General Statutes (Rev. to 1968), is given the same powers as those possessed by the referring (superior) court and who consequently will hereinafter be referred to as the court.

From a decision affirming the decree of the Probate Court approving the sale and dismissing the plaintiffs' appeal therefrom, the plaintiffs have appealed to this court.

The main claim of the plaintiffs is that the court applied an erroneous rule of law in deciding the appeal from probate. We find this claim dispositive of this appeal in the plaintiffs' favor. The appeal from probate was not, of course, an appeal from the allowance of a probate account, as such, as in cases such as *Reiley* v. *Healey,* 122 Conn. 64, 79, 187 A. 661, s.c., 124 Conn. 216, 221, 198 A. 570, and *French* v. *Oberreuter,* 157 Conn. 181, 193, 251 A.2d 67. Rather, the appeal was taken from an order of the Probate Court approving, under the provisions

of General Statutes § 45-236, the sale of the estate's
Sheffield stock to the Sheffield companies in accord-
ance with the agreements of sale. Section 45-236
authorizes the probate court to approve a sale of
stock or other personal property if the sale is found
to be "for the interest of such estate". Since the
sale in question was in part on credit, it is doubtful,
at least apart from the power of sale in the will
which does not appear to have been relied upon by
the court below, that the sale could have been safely
made without approval of the probate court. See
cases such as *Foster* v. *Thomas,* 21 Conn. 285, 290.
Our case law allows the sale of personal property
for cash without a specific order, subject to any
applicable provisions of General Statutes §§ 45-175
and 45-180. Of course any sale would be subject to
general fiduciary obligations of fair dealing. *Wil-
liams* v. *Taylor,* 81 Conn. 90, 95, 70 A. 643; *Connor*
v. *Hart,* 157 Conn. 265, 274, 253 A.2d 9. But § 45-236
permits the approval of a sale of personal property
even though, as here, it involves credit. The wisdom
of utilizing the statute is apparent in this particular
case in which the present plaintiffs, constituting but
two of the five remainder beneficiaries of the trust,
have raised numerous objections to the terms of the
proposed sale, although significantly they seem not
yet to have come forward with any customer for the
estate's stock or with any workable alternative plan
other than to suggest that the defendants threaten
the Sheffield companies with a receivership in the
hope of exacting better terms of sale or that they
actually institute an action for a receivership and
dissolution and a resulting court sale of each of the
Sheffield companies.

While the wording of § 45-238 authorizing ap-
proval by the probate court of the sale of real estate

differs widely from that of § 45-236 involving approval of the sale of personal property, we find no significant difference so far as the power and finality of the decision of the probate court is concerned, or the scope and effect of an appeal therefrom. See *Oles* v. *Furlong,* 134 Conn. 334, 339, 57 A.2d 405. In *Crane* v. *Manchester,* 143 Conn. 716, 719, 126 A.2d 567, it was expressly held that an order for the sale of real estate under § 45-238 lay within the discretion of the probate court and that on the appeal the superior court could go no further than to determine whether that discretion had been legally and reasonably exercised. There is no question that *Crane* v. *Manchester,* supra, was controlling at the time of the trial in the Superior Court or that in reaching its decision the court acted in full conformity with that case.

The plaintiffs vigorously claim that, even if the court acted in accordance with the controlling law, and we find that it did, the law should be changed, and it is to this claim that we now address our attention.

The procedure in our probate courts is informal, strict rules of evidence are seldom followed, many of the probate judges are laymen,[1] and no transcript or other record of any testimony presented is available. For this reason, although the statute generally authorizing appeals from probate (§ 45-288) contains nothing as to the type or scope of the appeal, it has been long held that the superior court on an appeal is not exercising its general jurisdiction but is exercising the powers of the probate court from which the appeal was taken. The probate court is a court of limited jurisdiction and has only

---

[1] In this particular case the judge of probate was a lawyer and a seasoned judge.

such powers as are given it by statute or are reasonably to be implied in order to carry out its statutory powers. See General Statutes § 45-4. And in acting on an appeal from probate the superior court is, in general, similarly limited in its powers.[2] *Carten* v. *Carten,* 153 Conn. 603, 614, 219 A.2d 711.

In an appeal from probate there is a trial de novo in which the appellant has the opportunity to present any evidence which could have been offered in the probate court, whether or not it was actually offered. And in the ordinary probate appeal, the superior court decides the matters on which the appeal was taken without regard to the action or decree of the probate court.[3] *Bailey* v. *Mars,* 138 Conn. 593, 603, 87 A.2d 388; *Reiley* v. *Healey,* 122 Conn. 64, 79, 187 A. 661; s.c., 124 Conn. 216, 222, 198 A. 570; *Davis' Appeal,* 39 Conn. 395, 401; 1 Locke & Kohn, Conn. Probate Practice, p. 438 § 214, p. 440 § 215; Cleaveland, Hewitt & Clark, Probate Law and Practice § 118, p. 118; Nobbs & Stevenson, Conn. Probate Law § 538. Indeed, that appears to have been the rule followed in *Williams* v. *Taylor,* 81 Conn. 90, 95, 70 A. 643, involving an application for the approval of a sale of capital stock in a family corporation under what is now § 45-236 of the General Statutes.

---

[2] The vexing question as to whether in all cases, the superior court, on appeal, is strictly limited to the powers which the probate court itself possessed appears not to be involved in this case. See Practice Book § 151; *Culver* v. *Union & New Haven Trust Co.,* 120 Conn. 97, 103, 179 A. 487; 1 Locke & Kohn, Conn. Probate Practice § 216, p. 443.

[3] Whether the superior court should itself enter the correct decree on appeal or remand the matter with instructions to the probate court is discussed in cases such as *Reiley* v. *Healey,* 122 Conn. 64, 79, 187 A. 661, s.c., 124 Conn. 216, 221, 198 A. 570, *Mathews' Appeal,* 72 Conn. 555, 560, 45 A. 170, and *Mack's Appeal,* 71 Conn. 122, 132, 41 A. 242. See also 1 Locke & Kohn, Conn. Probate Practice §§ 216, 217.

In *Carroll* v. *Arnold,* 107 Conn. 535, 542, 141 A. 657, it was held that the removal of a fiduciary under what is now § 45-263 of the General Statutes lay within "the sound discretion" of the probate court and that, where the probate court denied a petition for removal, on an appeal the question to be decided was whether the denial of the petition constituted an abuse of discretion; not whether, exercising its own independent judgment as an appellate court of probate and ignoring the decree of the court of probate, the superior court itself would have denied the petition for removal. In other words, the case marked the first clear development of the present exception to the general rule, an exception which now provides that in certain situations discretion is vested in the court of probate of a type such that the question on appeal is limited to whether the probate court had acted illegally or abused its discretion in entering the order or decree from which the appeal is taken. See 1 Locke & Kohn, op cit. § 218, p. 446. The present rule, in cases involving discretion of a type to make the limited appeal rule applicable, is perhaps best set out in *Willard* v. *McKone,* 155 Conn. 413, 414, 232 A.2d 322. In that case, however, the rule was held applicable on the ground that the probate court had "primary jurisdiction" to remove a fiduciary. Id., 415; see also *Baldwin* v. *Tradesmens National Bank,* 147 Conn. 656, 659, 165 A.2d 331.

*Reiley* v. *Healey,* supra, in each appeal, involved an approval of what amounted to a final account. It was there held that the superior court, on appeal, should settle the account, either directly or by remanding the account to the probate court with instructions, "except as to any issue the determination of which in the first instance is vested exclu-

sively in the Court of Probate". *Reiley* v. *Healey*, 124 Conn. 216, 222, 198 A. 570; see also 1 Locke & Kohn, op. cit. § 218, p. 447.

The effect of the *Reiley* opinions was to provide for two separate methods to be applied in the appellate review of an order approving a single probate account if that account included items "the determination of which in the first instance is vested exclusively in the Court of Probate". See 1 Locke & Kohn, op. cit. §§ 217, 218. The confusion and complexities resulting from such a rule are obvious, even if there were no difficulty in determining to what issues it was applicable, and suggest its undesirability in the interests of a simple and orderly system of review of probate decrees. Nor are the difficulties arising from this rule limited to appeals from the acceptance of a final account. Similar difficulties might arise in any probate appeal which is taken from more than one probate decree if a discretionary decree is included. See *Wilcox' Appeal*, 54 Conn. 320, 324, 8 A. 136; 1 Locke & Kohn, op cit. § 191, p. 392.

But of decisive importance is the fact that our cases have led to real uncertainty as to what probate decrees are within the discretionary jurisdiction of the probate court so as to fall within the limited appeal rule. See 1 Locke & Kohn, op. cit. § 186. A list of probate decrees which this court has held to be of that type, involving "some exclusive discretion" in the probate court, may be found in 1 Locke & Kohn, op. cit. § 218, p. 446. The authors of that text were unable to state any clear or precise test to apply in determining whether a given decree is or is not within the discretion of the probate court so as to make the limited appeal rule applicable. A tentative attempt to state such a test, in 1 Locke &

Kohn, op. cit. § 218, p. 447, is obviously too general in language to be useful or even workable, probably because of the inherent impossibility of stating such a test on the basis of our decisions, as hereinafter more particularly pointed out. This court has not itself undertaken to lay down any test or to expand or clarify its statements as to what decrees of a probate court are subject to the limited appeal rule.

It is only in instances where a particular probate decree has come before this court that a determination has been made as to whether that particular type of probate decree did, or did not, involve the exercise of discretion (whether termed "sound", "exclusive", "primary" or "in the first instance") of such a character as to affect and limit the appellate power of the superior court.

Nor can any workable test be evolved from an examination of the statutes authorizing particular probate decrees which we have held to be discretionary so as to fall within the limited appeal rule. There is no guide whatsoever except the case by case ipse dixit of this court where the opinion involved a particular type of probate decree. In discussing the discretionary type of probate decree which we have held subject to the limited appeal rule, we have used the terms "sound discretion" and "exclusive discretion", either alone or in combination with some such phrase as "primary jurisdiction" or jurisdiction "in the first instance". Obviously these terms are not synonymous, and thus we are left with no workable test at all. See, for instance, the majority and dissenting opinions in *Bailey* v. *Mars,* 138 Conn. 593, 603, 604, 87 A.2d 388.

We know of no statute where the probate court has, in express terms, or even by reasonable implication, been granted "exclusive discretion".

Nor does the phrase "primary jurisdiction" or "jurisdiction in the first instance" have any clear meaning in this connection. In any appeal from any type of probate decree the probate court must have exercised "primary jurisdiction" in the sense of "jurisdiction in the first instance" or there would have been no decree from which an appeal could have been taken. Certainly the superior court, in an appeal from probate, could not, in the first instance, have had jurisdiction, primary or otherwise, to grant the order appealed from.

Finally, if a de novo trial which will be fully effective is to be granted in the superior court on appeal from a probate decree, the superior court must logically be given the same power as the probate court itself had, including any discretionary power. In other words, after consideration of all evidence presented on the appeal which would have been admissible in the probate court, the superior court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court. This is the rule today in probate appeals except those taken from decrees in which the probate court has been stated to have a "primary" or "exclusive" or "sound" discretion, or discretion "in the first instance", or "primary jurisdiction in the first instance".

We find no sound reason for considering that the probate court has any special expertise in matters which in our case law we have held to fall within its primary or exclusive or sound discretion, or jurisdiction and, consequently, no good reason for considering that the superior court, on appeal, is not "as competent to deal with them as the Court

of Probate . . . ." See *Reiley* v. *Healey,* 124 Conn. 216, 222, 198 A. 570.

We conclude that our current rule, as followed by the trial court and supported by our cases beginning with *Carroll* v. *Arnold,* 107 Conn. 535, 141 A. 657, is, for the reasons pointed out, awkard, inadequate, and confusing; that it presents virtually insoluble problems in the determination of its applicability; and that it should be changed. Since all of these difficulties flow from the failure of the present rule to permit the superior court, on appeal, to exercise the powers, including any so-called discretion, of the probate court, it is in that respect that the law must be changed.

Consequently, we now hold that the foregoing exception to the general rule should be eliminated and that any discretion of the probate court, even though it has been denominated in our cases as sound or primary or exclusive, or as existing in the first instance, passes to the superior court on appeal and is to be exercised by it in an independent determination, without regard to the result reached by the probate court. See cases such as *Havens' Appeal,* 69 Conn. 684, 699, 38 A. 795; *Williams* v. *Taylor,* 81 Conn. 90, 95, 70 A. 643; see also 1 Locke & Kohn, Conn. Probate Practice, p. 438 § 214, p. 440 § 215; Cleaveland, Hewitt & Clark, Probate Practice and Law § 118, p. 118; Nobbs & Stevenson, Conn. Probate Law § 538.

In the instant case the court found, in the form of a conclusion and also stated in its memorandum of decision, in substance, that if it had been the court of probate or if on appeal it had had the powers of the court of probate, it would not have approved the agreements of sale.

It gave no explanation as to why it would not

have approved the decree. It did conclude that the decree entered by the Probate Court was legal in all respects and was not unreasonable and that the Probate Court did nothing unlawful, nor did it act arbitrarily or unreasonably.

The court's final conclusion was that the decree of the Probate Court involved in this appeal rested upon discretion and that on appeal the Superior Court could go no further than to determine whether that discretion had been legally and reasonably exercised.

All this makes it perfectly clear that the judgment of the Superior Court was not that which it would have rendered had it had and exercised the powers of the Probate Court but was merely a conclusion that the Probate Court had entered a decree which (although contrary to that which the Superior Court independently would have entered) was not arbitrary, unreasonable or illegal, and therefore that the probate decree had to be affirmed.

Since, for the reasons already given, the rule applied by the court should be changed as hereinbefore stated, we are constrained to find error and order a new trial in the Superior Court.

Because there must be a new trial of the appeal, in which a different rule of decision will be applied, it is unnecessary to consider the plaintiffs' other claims of error.

There is error, the judgment is set aside and the case is remanded to the Superior Court for a new trial of the appeal from probate in conformity with this opinion.

In this opinion the other judges concurred.