[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
The defendant, Smith Richardson Foundation Inc., has filed this September 9, 1999 Motion to Dismiss as to the second count of the plaintiff's Reasons of Appeal from the decision of the Court of Probate of the District of Westport. The defendant claims lack of subject matter jurisdiction because the issue raised in the second count "was not the subject of the order of the Probate Court appealed from."
 BACKGROUND FACTS
H. Smith Richardson, a well known entrepreneur and business executive, whose centerpiece product was Vick's Vaporub created the Smith Richardson Foundation Inc., during his lifetime. The foundation has grown in value and is worth in excess of $500,000,000. The Randolph Foundation is a charitable trust set up under Article Sixth of the July 29, 1969 last will and testament of H. Smith Richardson. It has assets of over $50,000,000. These two charitable foundations are engaged in a series of disputes over foundation management and asset distribution.
The July 29, 1969 will of H. Smith Richardson was admitted to probate by a decree of the Court of Probate, District of Westport shortly after Mr. Richardson's February 11, 1972 death. The original will established The Randolph Foundation and required that all of the foundation's income be accumulated for five years. Thereafter, for a period of five years, one quarter of the annual income would be paid in charitable grants for a certain period of time. On March 13, 1970 a codicil was executed, which contained a provision in a new subparagraph seven that granted the testamentary trustees the right to amend the provisions of Article sixth of the original will.
 I give to the Trustees acting from time to time under this Article SIXTH, the power and authority, exercisable by them in their sole discretion, to amend any of the provisions of this Article SIXTH as in their judgment may be necessary or desirable to fulfill, to the extent possible, the charitable purpose expressed herein including, but not limited to, such amendments as may be necessary to maintain the tax-exempt status of the charitable trust and/or the designation of some other `charitable beneficiary' as the recipient of income and/or principal other than the Smith Richardson Foundation, Inc. CT Page 6341
The exercise of this power is at the heart of the dispute.
At the execution of the July 29, 1969 will which established The Randolph Foundation as a charitable entity, the testator signed a precatory letter setting forth his intentions. "The idea then came to me that my particular family — through the opportunities given them in America — had accumulated great wealth. They had, therefore, an obligation . . . to serve their country. Upon reflection, it was my further thought that such service, to be complete, must encompass not only `government' service, but should also include service in non-governmental community activities and, most importantly, the devotion of one's wealth to the service of the public good."
The Tax Reform Act of 1969 required that all charitable foundations pay out five percent of the market value of its assets each year. Failure to make such payment would result in IRS penalties and the possibility of the Foundation losing its tax exempt status. In order to conform with the Tax Reform Act, and using the power of amendment contained in the March 13, 1970 codicil, the testamentary trustees executed an amendment in which all of the income of The Randolph Foundation would be made available by way of grants. This amendment did not use the language of the IRS code i.e. distribution of five percent of the fair market value of the assets. If the income from The Randolph Foundation was less than five percent of the market value of its assets, IRS penalties could accrue.
With that context in mind, a five page acknowledged amendment was executed by the trustees of The Randolph Foundation on May 13, 1991, which is the subject of this appeal. This amended Article Sixth of the will by adding a new subparagraph 9 to Article Sixth. This provided that the annual grants distributed by The Randolph Foundation would be the amount required to be distributed annually by the IRS (five percent of the fair market value of its assets) plus "3% of the fair market value of the trust's investment assets as calculated by the same methodology." This amendment also contained provisions for the eventual distribution of The Randolph Foundation's assets.
The 1991 amendment was executed by both sides of the family of H. Smith Richardson. As of May 1991 the Trustees of The Randolph Foundation were also Trustees of Smith Richardson Foundation Inc. The amendment was prepared and executed pursuant to a letter agreement between the two Foundations dated May 6, 1991. The agreement also provided for certain changes in trustees with a transition period. Today both sides of the family are in dispute as to the meaning of the 1991 amendment. The plaintiff claims that the May 1991 amendment "was to resolve certain CT Page 6342 differences that has arisen among members belonging to two branches of the late H. Smith Richardson's family which differences had been affecting the administration of the two foundations."
In any event, the amendment was put into full force and effect. An accounting was filed by The Randolph Foundation with the Westport Probate Court in 1996. It covered the period April 1993 through December 1996. The prior periodic accountings filed in the Probate Court were approved without any objections.
During the proceedings in the Westport Probate Court on the disputed accounting, Probate Judge Earl F. Capuano wrote a March 10, 1998 letter to counsel in an attempt to narrow the issues.
 1) The precise issue to be resolved regarding the amendment to the trust is the validity of the 3% provision which allows the trustees, in any given year to distribute an additional 3% of the fair market value of the trust's investment assets in addition to the amounts required under the Internal Revenue Code. Also, as part of that issue, if such provision were held to be valid, would any unexpended balance of the 3% amount accumulated from one year to the next or over a period of years, be distributable at any time in the future at the discretion of the trustees? Only the issues relating to the so called 3% Fund are before the court at this time as regards the 1991 amendment.
The parties apparently agreed to the terms of the letter as setting forth the parameters of the Probate Court litigation. At the contested Probate Court hearing the only items submitted into evidence were: (1) H. Smith Richardson's precatory letter dated July 29, 1969, (2) The 1996 accounting, (3) The original July 29, 1969 will of H. Smith Richardson; (4) The March 13, 1970 codicil, (5) The 1972 codicil; and (6) The May 13, 1991 agreement amending Article Sixth of the July 29, 1969 will. No other documents were either referred to or incorporated by reference in the Probate Court proceedings. No testimony was offered. Briefs were filed. No oral arguments were made. The parties so stipulated to these facts at the hearing before this court on the Motion to Dismiss. Therefore no evidence was necessary. Standard Tallow Corp. v. Jowdy,190 Conn. 48, 51 (1983).
The plaintiff did argue before the Probate Court that the three percent distribution should not be invalidated because it is part of the 1991 amendment which did not contemplating picking and choosing various CT Page 6343 sections. "SRF was eager to have the Court limit the Trustees' grant making authority by abolishing the 3% provision, but wishes to maintain that part of the Amendment that would ensure its control over the corpus of the trust at termination." Plaintiff's Memorandum, dated March 31, 1998 page 13, submitted to the Probate Court. The plaintiff did not brief its current claim that if one part of the 1991 amendment was invalid, then the entire amendment was invalid. Plaintiff's Memorandum, dated March 31, 1998 pages 12-14, submitted to the Probate Court. The defendant, Smith Richardson Foundation Inc., argued at the hearing that the Probate Court should "strike the 3% provision, rule that the trustees exceeded their authority in amending the trust to permit an additional 3% distribution and hold that such provision violates the intent of the testator and that the same is invalid and unenforceable."
On August 12, 1998 Judge Capuano issued a seven page written decision which is the subject of this appeal.
 As a result, it must hold that the provisions in question insofar as they purport to allow the trustees to segregate 3% of the market value of the investment assets of the trust for the purposes herein stated, are found to be contrary to the testator' s intent and are therefore invalid.
 The T.R.F. trustees are ordered to present a statement of condition of the 3% funds as of January 1, 1998 and to restore such funds, together with all subsequent accruals thereon to the appropriate principal and income accounts of the trust as a whole.
The plaintiff, The Randolph Foundation, (T.R.F.) appealed in a two count Reasons for Appeal dated October 16, 1998. The first count refers to the subject matter set forth in Judge Capuano's decision and is not part of this Motion to Dismiss. The first count claims that the Probate Court erred when it refused to accept the accounting, holding that the additional 3% distribution is invalid. The defendant, Smith Richardson Foundation Inc., admits that the Superior Court has subject matter jurisdiction over this issue.
The second count of the Reasons for Appeal raises the validity of the entire May 13, 1991 amendment including the disposition of the proceeds of The Randolph Foundation upon its termination, i.e., its distribution in the discretion of the Smith Richardson Foundation Inc. trustees. Among the claims alleged by the plaintiff in the second count are the following four paragraphs: CT Page 6344
"18. This Second Count is pled in the alternative to the claims and positions set forth in the First Count."
"19. The provision of the 1991 amendment permitting TRF to distribute to charities 3% of the asset value of the Trust . . . the consideration for this benefit to TRF was the agreement of TRF and its Trustees that the authority to distribute funds remaining in TRF at termination would be transferred from the Trustees of TRF to the trustees of SRF."
"20. These two provisions of the Agreement were mutually dependent so that if one provision failed the consideration supporting the other would disappear and the other provision would also fail."
"24. To the extent that the Probate Court decree discloses the 3% provision invalid while leaving in full force and effect the Terminal provision, as SRF contends, it is erroneous and improper."
The defendant, Smith Richardson Foundation, Inc., claims that the validity of the May 13, 1991 amendment amending Article Sixth was not before the Probate Court. It was not briefed nor referred to in any claim of the parties. It was not mentioned nor ruled on in Judge Capuano's written Memorandum of Decision. It further claims in its brief before this court that, "The Probate Court did not rule on the sufficiency of the consideration exchanged between the parties to the 1991 Settlement Agreement, nor did it rule on the viability of the remaining elements of the 1991 Settlement Agreement in the absence of the `3% provision.'" Therefore, the defendant argues that the Superior Court lacks subject matter jurisdiction over the second count.
This appeal was returnable to the Superior Court on September 14, 1998. This matter is but one of five appeals from the orders of Judge Capuano. All five have been assigned to this Complex Civil Litigation Docket. The first appeal was taken by The Randolph Foundation from a January 12, 1998 order that The Randolph Foundation must give future notice to the Smith Richardson Foundation, Inc. of all Probate Court matters. The second appeal was filed by the Smith Richardson Foundation, Inc. from the approval by the Probate Court of a charitable distribution and/or grant and/or loan of $1,250,000 by The Randolph Foundation to the Free Congress Research and Education Foundation, Inc. The third appeal is the subject matter of this suit. The fourth appeal was from a decree of the Probate Court ordering payment for attorneys fees incurred by the audit committee in the litigation of objections to The Randolph Foundation accounting. The fifth and final appeal was taken from the February 1999 order of the Probate Court that the audit committee chairman be salaried at the rate of $1,500 per year payable out of the trust funds. All of these files were transferred to Complex Civil Litigation in August of CT Page 6345 1999 and all essentially arise out of The Randolph Foundation's accounting for the period of April 1, 1993 to December 31, 1996. All involved hearings before the Probate Court, District of Westport, Earl Capuano, J. at various dates.
The order of Judge Capuano, which forms the basis of this appeal, held invalid the provisions of the 1991 amendment which changed the terms of the testamentary provision that created The Randolph Foundation and allowed its trustees to distribute annually an additional 3% of the fair market value of the foundation assets. Judge Capuano held that this provision was contrary to the testator's intent. The Randolph Foundation trustees were ordered to cease the distribution of the 3% as of January 1, 1998 and, if already distributed, to restore the funds to The Randolph Foundation.
The May 13, 1991 amendment also changed the method of distribution of assets upon the termination of The Randolph Foundation. The 1969 will in Article Sixth provided that after all lineal descendants had died plus 20 years, whatever assets remained in The Randolph Foundation would be distributed to the Smith Richardson Foundation, Inc. or whatever other charitable organization the testamentary trustees of the Article Sixth trust designated. The May 13, 1991 agreement amending Article Sixth and the new subparagraph 9 provided that after all lineal descendants had died plus 20 years, whatever assets remained in The Randolph Foundation would be distributed to the Smith Richardson Foundation, Inc. or whatever other charitable organization the "Board of trustees of Smith Richardson Foundation, Inc may in its absolute discretion, designate." The change was the power to choose the ultimate beneficiary. Essentially this is not a dispute over money but the power to give away money, large amounts of money.
 DISCUSSION OF LAW
The instant action is based upon a Motion for Appeal from Probate dated September 8, 1998 filed by the plaintiff, The Randolph Foundation, from the August 12, 1998 written order of Earl Capuano, Probate Judge, District of Westport. Judge Capuano had jurisdiction because H. Smith Richardson died a resident of Westport. His July 29, 1969 will was probated in the Westport Probate Court on February 17, 1972. Article Sixth of this will created The Randolph Foundation. There was no appeal from the admission to probate of this will and its two codicils.
This instant Motion to Dismiss, the second filed by the Smith Richardson Foundation, Inc., was filed on September 3, 1999. It addresses only the second count of the Reasons for Appeal. It alleges that the second count was not the subject of the Probate Court order nor CT Page 6346 the hearing before the Probate Court. The plaintiff's appeal contains three claims for relief: (1) a finding that the 1991 amendment is invalid or in the alternative, (2) a finding invalidating the three percent annual payment and/or (3) such other relief as is just and proper in the premises. The court has before it the documents that were before Judge Capuano that formed the basis of his August decision, in addition to Judge Capuano's written decision of August 12, 1998.
An appeal from probate is subject to a number of requirements. The appellant must have standing, ie., they must be aggrieved. "Any person aggrieved by any order, denial or decree of a court probate . . . may appeal therefrom to the Superior Court." General Statutes § 45a-186
A motion for appeal filed with the probate court must state the interest of the appellant in the subject matter of the decree or in the estate pursuant to General Statutes § 45a-191 and the adverse effect of the decree on that interest. Feigner v. Gopstein, 139 Conn. 738, 741 (1953). After the return date from the Motion for Appeal the appellant must file Reasons of Appeal with the Superior Court. Doyle v. Reardon,11 Conn. App. 297, 306 (1987). The allowance or disallowance of a Probate accounting can be appealed to the Superior Court. Reiley v.Healey, 122 Conn. 64, 79 (1936). "Although the statute generally authorizing appeals from probate . . . contains nothing as to the type or scope of the appeal, it has long been held that the superior court on an appeal is not exercising its general jurisdiction but is exercising the powers of the probate court from which the appeal was taken. The probate court is a court of limited jurisdiction and has only such powers as are given it by statute or are reasonably to be implied in order to carry out its statutory powers." Prince v. Sheffield,158 Conn. 286, 293-94 (1969). "In acting on an appeal from probate the superior court is, in general, similarly limited in its powers." Id. 294.Carten v. Carten, 153 Conn. 603, 614 (1966). An appeal from probate is a trial de novo, thus, the appellant has the opportunity to present evidence whether or not it was actually offered in the Probate hearing. "In the ordinary probate appeal, the superior court decides the matters on which the appeal was taken without regard to the action or decree of the probate court." Prince v. Sheffield, supra, 158 Conn. 294.
All counsel agreed that the issues raised by this motion have never been decided by any court in Connecticut. The issue framed by counsel is: "Although the Superior Court can take evidence not heard by the Probate Court and decide the matter de novo, does the Superior Court have subject matter jurisdiction to consider an issue that was not the subject of the underlying Probate Court hearing?"
The defendant's oral argument claims that there are three closely related issues that tend to get intermingled. "One is, what evidence can CT Page 6347 you hear on the trial of an appeal from Probate. The second is, what arguments of law can you make. The third is, what is the scope of the order or orders that can be appealed from." The defendant claims that it is only the third issue that is before this court in the Motion to Dismiss and the Plaintiff mixing in the other two concepts in its argument.
Prior to 1969, it was not at all clear what the powers of judicial review the Superior Court were when confronted with appeals from decisions by the Courts of Probate. Some decisions required that a trial in the Superior Court be de novo, whereas other cases treated the appeal as an abuse of discretion issue with judicial review limited to the record before the Probate Court.
This "sound discretion" method of judicial review in Probate Court appeals found support in cases where the probate court had "primary jurisdiction," Willard v. McKone, 155 Conn. 413, 417 (1967), or except as to any issue the determination of which in the first instance is vested exclusively in the Court of Probate. Reiley v. Healey, supra,122 Conn. 79. As the cases evolved there was uncertainty as to what cases are within the discretionary jurisdiction of the probate court so as to fall within the limited appeal rule. "The authors of that text (Locke Kohn) were unable to state any clear or precise test to apply in determining whether a given decree is or is not within the discretion of the probate court so as to make the limited appeal rule applicable."Prince v. Sheffield, supra, 158 Conn. 296. "We are left with no workable test at all." Id. 297.
Prince v. Sheffield, clarified the issue of the proper method of judicial review. Prince established that a Superior Court in an appeal from a Probate Court decision hears the matter de novo and exercises the limited powers of the Probate Court, not the general jurisdiction of the Superior Court. Prince noted the confusion and the complexities of the prior discretionary rules: "We conclude that our current rule . . . is, for the reasons pointed out, awkward, inadequate, and confusing; that it presents virtually insoluble problems in the determination of its applicability; and that it should be changed." Id. 299. "The foregoing exception to the general rule should be eliminated and that any discretion of the probate court, even though it has been denominated in our cases as `sound' or `primary' or `exclusive' or as `existing in the first instance,' passes to the superior court on appeal and is to be exercised by it in an independent determination, without regard to the result reached by the probate court." Id. This new rule will be followed in the future.
Stevens' v. Appeal, 157 Conn. 576 (1969) preceeded Prince by three CT Page 6348 months and involved an appeal from a Probate Court order which removed a natural parent as a guardian of a child. The trial in the Superior Court commenced four years after the Probate Court order. The issue at trial was could the Superior Court entertain evidence of the parent's fitness during the period of time between the two court proceedings. Stevens'
says that post-Probate Court order evidence may not be introduced in the Superior Court appeal.
 Both in subject matter and by limitation in the reasons of appeal it presented to the Superior Court for review the correctness of the ruling of the Probate Court under the circumstances as they existed when the order appealed from was made. The Superior Court could properly hear and consider any evidence relating to the reasons of appeal which would have been relevant and material at the hearing in the Probate Court. It could not, however, properly review the action of the Probate Court by a consideration of circumstances which had arisen thereafter. Thus, the proffered evidence of matters not in existence at the date of the hearing in the Probate Court was inadmissable." Stevens' Appeal, supra, 157 Conn. 582.
In Thomas v. Arafeh, 174 Conn. 464 (1978), a ward was determined to be incompetent by the Probate Court and an appeal from that order was taken. In the Superior Court trial, a few years later, the plaintiff attempted to introduce evidence that did not exist at the time of the probate court hearing, i.e., competency of the ward after the probate court order but prior to trial in the Superior Court. The Supreme Court, applying the judicial review standards of Prince and overruling Stevens
held that this was a matter of public policy and post-hearing evidence is appropriate.
 As we have noted, this court in Prince v. Sheffield
established that in all appeals from probate, the Superior Court is to address the underlying issue without regard to the Probate Court's determination. In appeals involving wills, the disposition of real estate, the approval of an accounting, and the like, the issues involved do not involve ongoing facts requiring reevaluation due to changing circumstances. If a will is determined to be valid, it need not be subjected to determination at a later time as to whether changing circumstances — as opposed to new evidence — have affected its validity. The question to be addressed in an appeal from a CT Page 6349 commitment order is of different nature entirely. Id. 469.
These two cases, Stevens and Thomas, establish that post hearing evidence may be introduced provided the subject matter is the same as was before the Probate Court. "In the traditional appeal, the scope of review is limited by the issues raised and the supportive evidence submitted in the lower court. In an appeal from probate, however, the informalities of the probate proceeding are corrected by permitting a full hearing in which new evidence may be submitted." Thomas v. Arafeh, supra, 174 Conn. 470.
The plaintiff cites in support of its position the latest case on admissibly of evidence in a later Superior Court appeal, Baskins Appealfrom Probate, 194 Conn. 635 (1994). This case dealt with a Probate Court decision regarding cremation. General Statutes § 45-253 awards the custody of the remains of the decedent, who is not survived by a spouse or who had been abandoned by a spouse, to his next of kin. The testator wanted his body cremated and named his son as the executor of the estate. The spouse objected, citing General Statutes § 45-253. He petitioned the Probate Court to determine what should happen to his father's corpse. The executor wanted to fulfill his father's wishes as stated in the will. The Probate Court denied the executor's claim. The son appealed. The Reasons of Appeal made no claim that the spouse had abandoned his father. At trial the Superior Court dismissed the case for lack of aggrievement. The executor first argued before the Supreme Court that he wished to offer evidence that his stepmother had abandoned his father thus invoking the standing exception under the remains statute. The Supreme Court agreed and reversed. The case was remanded for further proceedings so the executor son could "plead additional facts that would establish a claim that the decedent had been abandoned by the widow, as provided in the second sentence of 45-253, as a basis for an order concerning the custody and control of the decedent's remains." Id. 641-42.
The Supreme Court record states, "it was not in dispute that such a claim had been made in the Probate Court." Id 642. Baskins Appeal is an evidence case since the issue had been raised in the Probate Court and decided. Only a pleading deficiency prevented the plaintiff from raising the abandonment issue in the Superior Court.
An examination of these cases reveals that despite the attempted clarity of Prince v. Sheffield as to the scope of judicial review, three issues: (1) whether or not it is evidence, (2) whether or not it is dealing with issues of law, or (3) whether or not it is dealing with the subject matter of the underlying Probate Court hearing, have been frequently intermingled resulting in confusion similar to that noted in CT Page 6350 Prince.
This court finds that there are three cases that lead this court to conclude there is no subject matter jurisdiction as to the second count.Hartford Kosher Caterers Inc. v. Gazda, 165 Conn. 478 (1973), involved three separate orders of the Probate Court. Only the last of these three orders of the Probate Court was appealed to the Superior Court by the plaintiff. The first order was dated July 22, 1969 and directed the defendant conservator to enter into negotiations with the plaintiff who was the high bidder on real property belonging to the estate. The second order was dated July 30, 1969, which revoked the July 22nd order because the plaintiff's bid had not complied with the court's "single bid" instructions. The third order was entered on August 8, 1969 after a hearing held three days earlier. A new bid was submitted by the plaintiff at the August 15, 1969 hearing but it was rejected. The probate judge issued a decree ordering the real property sold to another bidder. The plaintiff appealed from this August 8, 1969 decree and sought specific performance of the July 22, 1969 accepted bid. The Superior Court was asked to deal with all three orders. On appeal the Supreme Court invoked subject matter jurisdiction and held that the Superior Court's subject matter jurisdiction is limited to the one order from which the appeal was taken. Judgment was directed for the defendant since the plaintiff had not appealed from the first two orders.
Silverstein's Appeal from Probate, 13 Conn. App. 45 (1987) is the subject of a number of appellate rulings: 18 Conn. App. 821 (1989),24 Conn. App. 818 (1991), 29 Conn. App. 904 (1992), and 224 Conn. 919
(1992). These cases involved multiple applications heard by the Probate Court. There was one order, covering three different subjects: (1) approval of a final accounting, (2) an ascertainment of heirs and distributees, and (3) an order of distribution. The Probate Court ruled on the accounting and disallowed certain claims in the accounting, ordering the administrator to reimburse the estate. It did not rule on either the ascertainment of heirs and distributees or the order of distribution. An appeal to the Superior Court was taken from that order by a number of family members. The parties to the Superior Court appeal entered into a stipulation dealing with not only the accounting but the ascertainment and distribution. This stipulation was presented to the Superior Court which entered a judgment in accordance with the stipulation and thus issued orders of distribution. The Appellate Court further found that there were two family members who were not parties to the Superior Court action and did not sign the stipulation.Silverstein's Appeal from Probate, supra, 13 Conn. App. 58. It held that the Superior Court cannot go beyond the parameters set by the Probate Court order. It found that the Superior Court lacked subject matter jurisdiction over the issues of ascertainment and distribution CT Page 6351 regardless of the fact that there was a stipulation.
 In a civil suit, although the parties are ordinarily restricted to the issues framed by the pleadings, the parties may, by consent, enlarge the scope of the litigation to include issues not raised in the pleadings. In a probate appeal, on the other hand, the Superior Court's jurisdiction is statutory and limited to the order appealed from. The issues presented for review are those defined in the reasons of appeal. The Superior Court cannot consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. This is so even with the consent of the parties to the appeal because the court has subject matter jurisdiction limited only to the order or decree appealed from. Id. 57-58.
 State of Connecticut v. Estate of China, 42 Conn. Sup. 548 (1993), involved the Probate Court's approval of a final accounting. The most substantial asset of the estate was a $19,500 personal injury settlement of the deceased. The State of Connecticut filed a claim against the decedent estate for AFDC benefits paid in the amount of $75,861.97. The final account approved by the Probate Court did not distribute the entire proceeds to the State of Connecticut and divided the residue of the estate equally between the State of Connecticut and the heirs at law. The issue heard in the Probate Court was the interplay between two Statutes, General Statutes § 17-83f (dividing proceeds equally between the beneficiaries of the estate and the State's AFDC reimbursement) and General Statutes § 17-83g (granting the State's AFDC lien priority distribution). The trial court found that the Probate Court erred and the distribution should be in accordance with General Statutes § 17-83g since the other statute is only applicable if the beneficiary is alive. The accounting was rejected by the trial court. A new issue was then raised in the Superior Court; should the estate be entitled to distribute $6,333.33 as attorney fees to the law firm that negotiated the $19,500 personal injury settlement prior to any payment to the State of Connecticut? The Superior Court found that there was a statute requiring a hearing. "Upon petition by any fiduciary, the probate court, after a hearing thereon, may authorize compensation in excess of the above schedule for extraordinary service." Since there was no such petition filed in the probate court, and no evidence that the tort attorney fees as extraordinary services was ever at issue in the Probate Court, the Superior Court declined to rule. "This court lacks jurisdiction . . . until such time as the administratrix files a petition for allowance of such fees as administrative expenses pursuant CT Page 6352 to § 17-83g and the Probate Court rules on that petition." Id. 557-58.
In summation, the first cited case, Hartford Kosher Caterers, involves an argument that was made at the Probate Court level. The Probate Court acted and an appeal was not taken from two of the three orders. The Supreme Court held that the Superior Court had no subject matter jurisdiction over these two orders. In Silverstein's Appeal, an argument was definitely made at the Probate Court; an application for an approval of accounting, ascertainment of heirs and distribution and an order of distribution. The Probate Court did not act upon the ascertainment of heirs and distribution or the order of distribution. The Superior Court stipulation did act on both the ascertainment and distribution. The Supreme Court held that there was no subject matter jurisdiction for the Superior Court to act in excess of the Probate Court's original order, which was limited to approval of an accounting. In China, the argument as to a deduction for attorney fees was not made at the Probate Court. It appears this argument had validity at law. The Superior Court could not consider the issue regarding a deduction for attorney's fees since it was beyond the subject matter jurisdiction of the Superior Court.
 CONCLUSION
This court has examined the Probate Court records. The issue of the validity of the entire 1991 amendment was not before the Probate Court. There was no mention of that claim either in the briefs of the parties or any of the arguments before the Probate Court. There was no testimony before the Probate Court. Both parties so agreed in oral argument on this Motion to Dismiss. It was submitted to the Probate Court as a matter of law on the documents and the briefs. The one issue before the Westport Probate Court is stated in the first two sentences of Judge Capuano's decision. "The issue presented involves the construction of an amendment made on May 13, 1991 affecting the terms of a charitable trust created under Article SIXTH of the will of H. Smith Richardson. The dispute focuses on the validity of a provision of said amendment which permits the trustees, now referred to collectively herein as The Randolph Foundation (T.F.R.), to distribute annually, 3% of the fair market value of the trust's investment assets in addition to the amount required to be distributed under Section 4942 of the Internal Revenue Code. (I.R.C.) of 1986."
This court finds that the subject matter of the second count of the plaintiff's complaint was not raised either factually or legally before the Probate Court. Moreover, the Probate Court's August 12, 1998 decision did not contain any discussion of the overall invalidity of the 1991 agreement. The only issue before the Probate Court was that of the CT Page 6353 invalidity or validity of the extra three percent of the assets of The Randolph Foundation being distributed annually in addition to the IRS required annual five percent distribution. Judge Capuano found that the three percent provision was invalid and that it violated H. Smith Richardson's testamentary intent as set forth in his will, his codicil, and his precatory letter of July 29, 1969. This issue is raised in the first count of appeal. The court has subject matter jurisdiction only of the first count of the appeal.
"The appeal brought before the Superior Court for review only the order appealed from." Stevens' Appeal, supra, 157 Conn. 580. "On the appeal the Superior Court could, in a trial de novo, have received any evidence on matters covered by the reasons of appeal which could have been relevant and material in the hearing in the Probate Court . . . It could not consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked." Id. 581. "Since it is an appeal from an order of the Court of Probate the Superior Court cannot enlarge the scope of appeal . . ." Wildman's Appeal, 111 Conn. 683,686 (1930). "The Superior Court cannot consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked." Hartford v. Kosher Caterers, Inc. v. Gazda, supra,165 Conn. 486. "It follows that the Superior Court is without power on appeal from probate to proceed through all the forms of a complete settlement of the estate as a prerogative court, and may not consider or adjudicate issues beyond the scope of those proper for determining by the decree being attacked." Silverstein's Appeal from Probate, supra,13 Conn. App. 52-53. "Because this court has jurisdiction only to decide appeals from determinations made by the Probate Court, and the allowance of these counsel fees has not been the subject of a petition to the Probate Court in accordance with the procedure set forth in § 17-83g, this court is without jurisdiction to determine this issue at this time." State v. Estate of China, supra, 42 Conn. Sup. 557.
The Motion to Dismiss the second count is hereby granted.
BY THE COURT.
KEVIN TIERNEY, J.